528 So.2d 644 (1988)
Earle Newton DODD & Jacque Bradford Dodd, Plaintiffs-Appellants,
v.
William York TUCKER, Jr., Defendant-Appellant.
No. 19587-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
*645 Blanchard, Walker, O'Quin & Roberts by M. Allyn Stroud, Shreveport, for defendant-appellant.
Bodenheimer, Jones, Klotz & Simmons by James P. Bodenheimer, Shreveport, for plaintiffs-appellants.
Before HALL, FRED W. JONES, JR. and LINDSAY, JJ.
LINDSAY, Judge.
This is a quanti minoris suit arising from the purchase of a house on Cross Lake in Shreveport, Louisiana, by Earle Newton Dodd and Jacque Bradford Dodd, the plaintiffs, from Dr. William York Tucker, Jr., the defendant. The trial court denied the plaintiffs' main demand. However, it overruled the defendant's plea of prescription and rendered judgment in the plaintiffs' favor on the demand asserted in their supplemental petition, which was filed three years after the original petition. Both the plaintiffs and the defendant appealed.
*646 We have reviewed and will discuss hereafter each of the issues raised by the parties in their respective appeals. Based upon that review, we conclude that, although the initial defect of which plaintiffs complain, i.e., the leaking roof and cracked slab in the den, were not apparent defects, nevertheless, recovery for the extensive repairs made to the home must be denied due to plaintiff's failure to prove, with any reasonable degree of accuracy, the cost of the necessary repairs, as opposed to discretionary remodeling costs. Further, we conclude that although the claim for the cost of repairing the slab in the master bedroom, which was made in plaintiff's supplemental petition filed over three years after the sale, had not prescribed, plaintiffs have also failed to prove that the slab was cracked and defective at the time of their purchase of the home.
Accordingly, we affirm in part, and reverse in part, the trial court judgment.

FACTS
In the early part of 1983, Mrs. Dodd learned that the Cross Lake home of Dr. Tucker was about to be put up for sale. Dr. Tucker was making plans to move to North Carolina. She contacted Dr. Tucker, who said he wanted her to wait until after certain work was done on the house before he showed it. Some repairs were made and the exterior of the house was painted before the Dodds viewed it in May, 1983. Their first brief visit was followed by a more extensive one a week later. The second visit lasted about an hour.
The house contained two bedrooms, two bathrooms, a living room, a dining room, a den, and a kitchen. There was also a two-car garage. The property included a pier and a boathouse on the lake. After viewing the home, an agreement was reached whereby the Dodds purchased the house for the sum of $110,000. The terms of the sale provided for payment of $19,201.21 in cash, plus the assumption of a first mortgage (the principal balance of which was $90,798.79 at the time of sale).
Mrs. Dodd testified that prior to the sale she and Dr. Tucker discussed a previous leak in the dining room ceiling. Dr. Tucker assured her that this leak had been repaired. She testified that she also asked Dr. Tucker if there was any drainage problem at the front of the house near the den, and he told her there was not. She stated that she observed an obvious crack in the front porch slab. Additionally, Mrs. Dodd testified that she noticed that the floor of the den slanted "a little" and in her deposition she admitted that Dr. Tucker also told her that the den floor slanted. Plaintiffs testified that they did not observe any defect in the den ceiling.
The plaintiffs moved into the house in July, 1983. The first hard rain occurred in August, 1983, at which time the den roof leaked water into the house. The plaintiffs engaged Paul Tilton, the operator of New Day Construction Company and a close friend of more than twenty years, to look at the house and make repairs to the roof. He agreed to perform the work on a "cost, plus ten percent" basis. In the course of repairing the den roof, Mr. Tilton discovered that the slab of the den floor was cracked and the walls were improperly constructed. He also discovered other extensive defects in the house which, in his view, "necessitated" repairs. He testified that the den roof was the initial cause of the repairs, and then "one thing led to another."
Mr. Tilton placed a new gabled roof over the entire house. He also installed a cathedral ceiling in the den. Other "defects" discovered by Mr. Tilton included: (1) a rotted kitchen floor attributable to the rusted and leaking dishwasher and hot water tank; (2) sagging piers underneath the house which made it difficult to raise and lower the windows in the guest bedroom; (3) old termite damage under the dining room windows; and (4) rotted porch beams and ceiling joists.
In the course of his work, which consisted of practically rebuilding the house and making the "necessary" repairs referred to above, Mr. Tilton also rebuilt the lower kitchen cabinets, and then painted and refinished all of the kitchen doors and top cabinets. New hardware was installed. *647 He also painted the living room, the den, the guest bedroom and the hallway. He installed new carpeting in several areas, and constructed new steps leading from the entrance to the den. The arrangement of the walls between the den and the dining area was modified. The front door of the home was placed in a new location. Mr. Tilton said that the sagging of the building prevented the windows in the guest bedroom from closing normally. When he took the windows out, he also repositioned them to a level more pleasing to Mrs. Dodd. On the extensive, Mr. Tilton placed stone siding on the front, back, and one side of the house. He also poured a new concrete slab for the front porch, and set new posts for the front porch. A concrete patio was built at the rear of the home. The chimney was reflashed and covered with stone.
The plaintiffs filed suit on June 7, 1984, seeking $46,267.25, the amount spent on repairs, plus costs and reasonable attorney fees. The defendant answered, alleging that any defects in the house were apparent, or, alternatively, the defects did not exist on the day of the sale and did not appear within three days of the sale. The defendant also pled alternatively that the defects did not exist on the day of the sale and were caused later by the plaintiff's lack of care. The defendant further claimed that the plaintiffs purchased the house "as is" and the sales price was reduced to reflect the condition of the house.
On July 16, 1987, the date of trial, the plaintiffs filed a supplemental petition alleging that in December, 1986, they discovered a crack in the slab of the master bedroom. They claimed additional damages of $4,054, the amount required to repair the slab and stabilize the soil. To this claim the defendant pled the prescription of one year.
Following the trial, the trial court rejected the plaintiffs' principal demand, but granted judgment in their favor on the demand contained in their supplemental petition. The trial judge did not assign written reasons for judgment. However, in an oral colloquy with counsel at the conclusion of the trial, he indicated that the defect in the roof was apparent, and, even if it was not apparent, the testimony concerning the necessity for the extensive repairs and the cost thereof was not sufficient for him to exercise his discretion in awarding damages. In rendering judgment, the trial court specifically overruled the defendant's plea of prescription as to the claims asserted in the supplemental petition, and awarded plaintiffs the sum of $4,054 as damages for the costs of repair of the slab in the master bedroom. The court divided the costs of the suit equally between the parties. The judgment was rendered, signed, and filed July 21, 1987.
The plaintiffs filed a devolutive appeal. They assign as error that: (1) the trial court erred in finding that the defect in the den roof was apparent; (2) the trial court erred in not assessing the minimum damages outlined in Mr. Tilton's uncontradicted testimony; and (3) the trial court erred in failing to award attorney fees to the plaintiffs.
The defendant filed a suspensive appeal. He urges as error that: (1) the trial court erred in finding that the claim asserted in the supplemental petition had not prescribed; and (2) the trial court erred in finding the crack in the bedroom floor existed at the time of the sale.

APPARENT DEFECT
In their first assignment of error, the plaintiffs assert that the trial court erred in concluding that the defect in the den roof was apparent. The trial judge said in open court at the conclusion of the trial that he accepted Mr. Tilton's testimony that he could observe a sag in the den ceiling immediately upon viewing it. The judge added, "And if it was readily apparent to Mr. Tilton it was readily apparent to anybody else."
The law provides that a seller warrants against a hidden defect in the thing sold. LSA-C.C. Art. 2475 and 2476. A sale may be avoided on account of some vice or defect in the thing sold which renders it either absolutely useless or its use so inconvenient and imperfect that it must be *648 supposed that the buyer would not have purchased it had he known of the vice. LSA-C.C. Art. 2520. Apparent defects discoverable by simple inspection are not redhibitory vices. LSA-C.C. Art. 2521. The buyer must prove that the vice existed before the sale if the defect does not manifest itself within three days. LSA-C.C. Art. 2530. In a redhibitory suit, the judge may decree merely a reduction in price. LSA-C.C. Art. 2543. The action for a reduction of price or quanti minoris is subject to the same rules that govern an action in redhibition. LSA-C.C. Art. 2541 and 2544. Smith v. Chang, 467 So.2d 1277 (La.App. 4th Cir.1985). In the present case, the plaintiffs seek only a reduction in price.
If the defects complained of by the purchaser are apparent, that is, such as the purchaser might have discovered by simple inspection, the purchaser cannot recover. The buyer is under no obligation to inspect with expertise or to deface the thing purchased while inspecting it, particularly when damage can be fully determined only by removal of the surface coverings. Rice v. Lee, 442 So.2d 605 (La.App. 1st Cir.1983); Sievert v. Henderson, 506 So.2d 743 (La.App. 1st Cir.1987). A purchaser is not required to climb on a roof to inspect it prior to a sale. Gonzales v. Schultis, 427 So.2d 669 (La.App. 4th Cir. 1983).
A leaking roof on a building is a defective roof, and such a defect may be sufficient to entitle the purchaser to demand a reduction of the price. Hunter v. Wilson, 355 So.2d 39 (La.App. 3rd Cir. 1978), writ denied 357 So.2d 1154 (La.1978).
In evaluating the reasonable methods of inspection for apparent defects in redhibition or quanti minoris cases, the applicable rule is whether a reasonably prudent buyer acting under similar circumstances would have discovered the defect. Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963); Fraser v. Ameling, 277 So.2d 633 (La.1973); and Bernofsky v. Schwartz, 370 So.2d 590 (La.App. 4th Cir.1979).
We have examined numerous cases in the Louisiana jurisprudence involving leaking roofs. In the following cases, the buyers were granted relief. DiPietro v. Leblanc, 68 So.2d 156 (La.App. 1st Cir.1953) [the lack of felt lining constituted a defect which could not be detected by simple inspection]; Russell v. Bartlett, 139 So.2d 770 (La.App.4th Cir.1961) [cracked and improperly installed shingles rendered the roof defective; not discoverable by simple inspection]; Glynn v. Delcuze, 149 So.2d 667 (La.App.4th Cir.1963) [although aware of broken shingles before sale, the buyer was not aware of improper construction; defect not apparent]; Busenlener v. Peck, 316 So.2d 27 (La.App.1st Cir.1975) [buyers noticed water stains but were told new roof installed]; Verlander v. Hoffer, 351 So.2d 229 (La.App.4th Cir.1977), writ denied 353 So.2d 1037 (La.1978) [no reason for buyers to suspect leak in roof]; Hunter v. Wilson, supra [buyer noticed leak but was assured of repair by seller; although the roof was old and worn, buyer could not have determined it would leak even if he had climbed on the roof to look at it]; Garrett v. Gayle, 405 So.2d 622 (La.App.3rd Cir.1981), writ denied 409 So.2d 669 (La.1982) [rusted gutters and curling shingles failed to constitute a defect putting buyer on notice to inspect for leaks]; Estopinal v. Bourshie, 420 So.2d 749 (La.App.4th Cir.1982) [although there was a small hole in the ceiling with surrounding water stain, buyers were assured of repairs]; Rice v. Lee, supra [rotting felt of slate roof not a defect observable to the untrained eye]; and Smith v. Chang, supra [no water stains at time of sale, so no reason to expect leak].
Only on rare occasions have the courts found leaking ceilings to constitute apparent defects. Dansky v. Thompson, 415 So.2d 396 (La.App. 1st Cir.1982) [leakage in room was attributable to water leaking from flat roof into attic and down an interior wall; a large part of the problem was caused by the buyers' lack of proper maintenance]; Cure v. Hull, 482 So.2d 725 (La. App. 1st Cir.1985) [the defective roof was visible and even cursory inspection would have discovered its buckling and cracking condition]; and A & B Restaurant Equipment, Inc. v. Homeseekers Savings & Loan, 506 So.2d 137 (La.App. 4th Cir.1987), *649 writ denied 512 So.2d 852 (La.1987) [apparent defects existed where ceiling in one area had collapsed and other areas contained cracks through which daylight could be seen].
In the instant case, the testimony established that the den ceiling contained a sag of about five inches. However, the den roof had no prior history of leakage. Mr. Tilton testified that the sag was only discernable to the "trained eye" of a builder. We do not believe that the sag alerted the plaintiffs to the possibility that the roof might eventually leak. (Dr. Tucker testified that the sag had been present since he purchased the house in 1980. The den roof never gave him any difficulty.) The sag may have indicated that the ceiling itself was not entirely sound, but it did not demonstrate that the integrity of the roof itself had been violated. There is no evidence that either of the plaintiffs made a detailed inspection of the roof, or noticed anything wrong with its construction. A simple inspection would not have revealed to the plaintiffs that the roof was improperly constructed.
Additionally, although not addressed by the trial court, nor assigned as error by the parties, we note that the slight slant in the den floor, in and of itself, and without additional evidence, was insufficient to place the plaintiffs on notice that a defect existed in the slab.
We find that the trial court erred in determining that the leaking roof was an apparent defect as contemplated by Article 2521. Consequently, we now consider the issue of damages.

DAMAGES
In their second assignment of error, the plaintiffs contend that the trial court erred in failing to award the minimum damages estimated by Mr. Tilton. Although Mr. Tilton testified in his deposition that the total amount spent on repairing and/or remodeling the house exceeded $46,000, he conceded that between $10,000 and $15,000 was spent on unnecessary remodeling. Thus, the plaintiffs seek recovery of $31,267.25 for repairs necessitated after the discovery of the leak in the den roof.
The purchaser has the burden of proving the amount of reduction in the purchase price with reasonable certainty. The trial judge is afforded much discretion in determining the amount of the reduction. Simmons v. Percy, 423 So.2d 1295 (La. App. 4th Cir.1982), writ denied 430 So.2d 75 (La.1983). The general rule for the measurement of damages in quanti minoris actions is the determination of the difference between the value of the defective thing at the time of the sale and the value as warranted by the seller. When real estate is involved, the allowable diminution should be the amount necessary to convert the unsound structure into a sound one. Smith v. Chang, supra.
From the photographs admitted into evidence which show the house prior to the performance of Mr. Tilton's work, it is apparent that the house was in a somewhat "worn" state at the time of purchase. The house was certainly more attractive after the repair work. Additionally, the purchase price of $110,000 reflected not only the value of the house, but also included the value of prime, lake-side real estate. Certain aspects of the house were obviously not to the plaintiffs' liking, primarily because of the house's age and the plaintiffs' own standards of aesthetics.
The myriad of repairs and renovations performed on the house included the following items. A gabled roof was installed over the entire house, whereas the roof previously had several gabled and flat levels. However, other than the leak in the den roof, there was no evidence of leaking in any other area of the house. Mr. Tilton testified that he found it necessary to replace the entire roof "because I felt like that in the long ... run, ... it would be better for the house. It would keep from having to come back and do it again."
A cathedral ceiling was installed in the den instead of another paneled ceiling. Air conditioning ducts that had previously been exposed above the den's flat roof were enclosed under the new gabled roof. A new mantel was installed over the fireplace *650 in the den, and one steep step in that room was replaced by three smaller steps. Additionally, new carpeting was placed in the den. The concrete slab of the den floor was repoured, and the walls of the room were rebuilt. Substantial amounts of painting and wallpapering were done throughout the house.
Leakage which was attributed to the hot water heater and the dishwasher resulted in rotted wood in the kitchen floor and the surrounding lower cabinets. A new dishwasher and hot water heater were installed, as were new cabinets and wood work.
A patio was added at the rear of the house. The piers under the living room, the kitchen, and one of the bedrooms were jacked up. New pillars were built on the front porch, and the front door was relocated and replaced. Stone siding was affixed to the outside of the house, and the remaining exterior was painted.
In his deposition, Mr. Tilton initially refused to speculate as to a breakdown in the cost between that which was necessary because of defects in the home, and that which was done to beautify the house in accordance with the Dodds' wishes. Mr. Tilton testified that all work and labor performed was done on an hourly basis. He said he could not provide a figure for the various construction tasks performed or what amount was attributed to necessary repairs.
However, after a short recess and conference with plaintiffs' counsel, Mr. Tilton provided an estimate of $10,000 to $15,000 as the amount directly attributable to cosmetic work on the house. Mr. Tilton said that this was a general estimate based on his expertise as a builder and that he had not reviewed the bills to reach these amounts. Presumably included within this figure were the items which Mr. Tilton conceded were not necessary, i.e., remodeling items. He admitted that the stone covering which he placed on on the exterior of the house, the new patio, the new front door, the stone top of the chimney on the exterior, and the glass windows installed in the den to capture the view of the lake were not necessary repairs.
The trial judge stated, at the conclusion of trial, that he could not, in good conscience, accept the testimony of Mr. Tilton as establishing the cost of necessary repairs. "I do not accept the testimony of Mr. Tilton as establishing a basis for his estimates for low or high end amounts to be allocated to remodeling versus repairs. Mr. Tilton, it seems to this Court, should have been able to tell counsel for defendant under repeated questioning how much would you allocate to the den, the first area that he went in to repair.... When you [plaintiffs] are so unsupported, ... it is just reaching out and grabbing at figures it appears to the Court. I am just unable to do it." The trial court went on to find that the plaintiffs "failed to carry their burden of proof sufficiently to establish hidden damages for which this Court can make a reasonable award, even though exact amount of damages has not been shown.... I will notdo not for one minute accept the testimony of Mr. Tilton that the extent of the needed repairs even remotely approached what he has testified to."
In large measure, we share the trial court's incredulity on the issue of damages. To allow the sum sought by the plaintiffs would be unconscionable under the circumstances of this case. The record fails to support Mr. Tilton's estimates.
In Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959), also a quanti minoris case, the matter was remanded to the trial court for the taking of additional evidence because the purchaser failed to prove to a reasonable certainty the amount of the reduction to which he was entitled. Here, however, Mr. Tilton stated that no records were kept dividing what percentage of the labor and material was utilized on repairs and what was spent on remodeling. He also added that the passage of time since the work was performed prevented him from accurately recalling this information. Consequently, on remand, the trial court would have before it the same evidence which is currently in the record on appeal.
Even if we look only to the repairs in the den, i.e., the roof, floor and walls, it is *651 impossible to separate the labor and material charges for these repairs from other repairs in the home. Further, there is no estimate of the necessary cost to repair the slab and walls and to replace the leaky roof with another flat roof that did not leak. We agree with the trial judge that we cannot speculate as to the cost of these repairs.
Plaintiffs also contend that they are entitled to recover the cost of the defective dishwasher and hot water heater. They also claim they are entitled to recover the cost of repairing the damage caused by the defective appliances. The dishwasher did not manifest any problems with leakage until October, 1983, some four months after the plaintiffs moved into the house. Not only is the record devoid of proof that the dishwasher contained a vice at the time of the sale, it was readily available for the plaintiffs' inspection. Thus, no recovery will be allowed for its replacement.
Nor will recovery be allowed for the hot water heater. Dr. Tucker and Mrs. Dodd both testified that there was some discussion about the popping and cracking noises made by the hot water heater. We find that the plaintiffs were placed on notice as to the hot water heater's condition. A reasonably prudent buyer would have investigated further.
Further, we are unable to allow recovery for damages for the rotted floor which was concealed underneath the indoor/outdoor kitchen carpeting, or for the damage to the floor under the dishwasher and hot water heater. Nor can we allow recovery for the termite damage. Again, we are unable to determine from Mr. Tilton's testimony, or the invoices submitted in evidence, the reasonable and necessary costs of repair of those items. Nor will recovery be allowed for the other repairs in the kitchen, which included unnecessary remodeling.
The trial court's determination that the plaintiffs failed to carry their burden of proving the amount of reduction with reasonable certainty is correct. To that extent, the trial court's judgment is affirmed.

ATTORNEY FEES
The plaintiffs seek attorney fees from Dr. Tucker as a bad faith seller who concealed a vice in the thing sold. LSA-C.C. Art. 2545. They claim that he was aware of a problem with the superstructure above the den ceiling. They also argue that his intent to conceal was apparent in his refusal to allow the Dodds to view the house until after certain work was done.
The trial court correctly found Dr. Tucker to be a good faith seller. We believe Dr. Tucker's knowledgeor more accurately, his lack of knowledgeof a defect was comparable to that of the Dodds. The den roof did not leak prior to the sale. While there was a sag in the ceiling, it did not put him on notice of potential leakage any more than it did the Dodds. As to the work done before putting the house on the market, we have no evidence to support an inference of evil intention on Dr. Tucker's part. Many sellers take steps to improve their houses prior to placing them on the market in order to enhance their appearance and to create a positive first impression with potential buyers. Furthermore, Dr. Tucker testified that the decision to paint the house was made before family matters precipitated his move to North Carolina.
The plaintiffs' evidence falls woefully short of establishing bad faith on the doctor's part. Accordingly, even if plaintiffs had proved their entitlement to damages, we would be compelled to deny their demand for attorney fees.

PRESCRIPTION
The defendant claims in his first assignment of error that the trial court erred in finding that the demands asserted in the supplemental petition had not prescribed. This assignment of error is without merit.
When a seller is in good faith, as was Dr. Tucker in this case, a buyer's redhibitory action must be brought within one year from the date of the sale. LSA-C.C. Art. 2534 and 2544. The house was purchased on June 28, 1983. The original *652 suit was filed on June 7, 1984, but the amended petition was not filed until July 16, 1987. However, we hold that the amendment relates back to the date of the filing of the original pleading, and thus the demands asserted in the amended petition had not prescribed. LSA-C.C.P. Art. 1153.
Article 1153 permits amendment despite technical prescriptive bars, where the original pleading gives fair notice of the general factual situation out of which the amended claim or defense arises. Baker v. Payne and Keller of Louisiana, Inc., 390 So.2d 1272 (La.1980); Lowe v. Rivers, 448 So.2d 848 (La.App. 2d Cir.1984). Where the pleadings reveal some factual connexity between the original and the amended assertions and contain sufficient allegations to afford fair notice to the adverse party of the relief sought, amendments should be allowed. Mason v. Stauffer Chemical Company, 451 So.2d 32 (La.App.1st Cir. 1984), writ denied 452 So.2d 1175 (La.1984). Article 1153 only requires that the amended petition's thrust factually relate to the conduct, transaction or occurrence originally alleged. Gunter v. Plauche, 439 So.2d 437 (La.1983).
Here, the parties in both the original and the amended petitions are the same. The theory of recovery (an action in quanti minoris) and the transaction or occurrence giving rise to the original demand or object of the suit (the purchase of a house containing defects) are likewise identical in both petitions. The original petition was sufficient to provide the defendant with notice that he was being sued because of defects in the object of the sale. The defects in the bedroom slab are factually connected with the other defects in the house since the sale encompassed the property as a whole. Thus the claim presented in the amending petition arose out of the same transaction of sale so as to relate back to the date of the filing of the original petition. Reynoir v. Succession of Hero, 513 So.2d 405 (La.App.4th Cir.1987).

SUPPLEMENTAL PETITION
In his second assignment of error, the defendant argues that the trial court erred in finding that the bedroom slab was cracked at the time of the sale. The trial court gave no written or oral reasons for granting judgment on this issue. The crack was discovered in December, 1986, about three and one half years after plaintiffs purchased the house. The only evidence presented at trial concerning this crack consisted of photographs, a letter from a civil engineer dated December 24, 1986, and the cancelled checks and bills pertaining to the repair costs. In the letter, the civil engineer expresses no opinion as to when the slab cracked. Although the engineer suggests a possible cause for the cracked slab, no time frame is mentioned. The letter provides us with no assistance in determining whether the slab was cracked at the time of plaintiffs' purchase, or whether it occurred later.
Civil Code Article 2530 provides that a buyer must prove that the defect existed before the sale. A defect which appears within three days of the sale is presumed to have existed before the sale. Even if the defect appears more than three days after the sale, a reasonable inference may arise, in the absence of an intervening cause or other explanation, that the defect existed at the time of the sale. Millspaw v. Knight, 430 So.2d 1207 (La.App.1st Cir. 1983).
However, inasmuch as more than three years passed between the time of the sale and the discovery of the crack, we cannot say that the defect was discovered within a "reasonably short period of time." Nor, after such a length of time, can we presume that the defect was present at the time of the sale. Without evidence to substantiate such a claim, we cannot say that the defect existed when the sale occurred.
Thus, we reverse that portion of the trial court judgment granting recovery for the cracked bedroom slab.

CONCLUSION
The judgment of the trial court rejecting plaintiffs' demands contained in their original petition is affirmed. Although the trial court's judgment on the issue of prescription *653 is correct, that portion of the judgment granting recovery on the demands asserted in the supplemental petition is reversed. All costs in the trial court and in this court are assessed against the plaintiffs.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.