542 So.2d 1090 (1989)
Charles David CREGER and Vita Jane Norris Creger, Plaintiffs-Appellees,
v.
Richard Paul ROBERTSON and Donna Catherine Welborne Robertson, Defendants-Appellants.
No. 20417-CA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
*1092 Rountree, Cox & Guin by Gordon E. Rountree, Shreveport, for defendants-appellants.
Tucker, Jeter, Jackson, McMichael & Hickman, by T. Haller Jackson, III, Shreveport, for plaintiffs-appellees.
Before FRED W. JONES, Jr., LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The plaintiffs, Charles David Creger and Vita Jane Norris Creger, brought suit against Richard Paul Robertson and Donna Catherine Welbourne Robertson, the couple from whom they purchased a house in the Pierremont Subdivision of Shreveport, Louisiana. The plaintiffs asserted that the defendants failed to notify them of the vices in the home which involved the plumbing and an "offensive" odor in the playroom carpet. From a trial court judgment of $1,928.25 rendered in favor of the plaintiffs, the defendants appeal.

FACTS
In the summer of 1987, the plaintiffs became interested in purchasing the defendants' home. The plaintiffs inspected the house twice before the sale, on July 16 and 19, 1987. Mr. Creger testified that he noticed a "peculiar" odor in the house, including the playroom, which had been an open garage before the defendants enclosed it in 1984. However, neither Mr. Creger nor his wife mentioned the odor to the defendants.
The sale was closed on July 31, 1987. The defendants had the house professionally cleaned after they moved out. On August 15, 1987, the plaintiffs took possession of the house. Again, they noticed the odor *1093 but failed to inquire about it. On August 17, their furniture was moved into the house.
The plaintiffs determined that the playroom carpet was the source of the odor and shampooed it. However, the odor persisted. Although no expert inspected the carpet, the plaintiffs concluded that the stains and odors had been caused by dog urine. Mr. Creger testified that there were enormous stains on the underside of the carpet, that the tack strip underneath contained crystalized urine, and that the concrete floor was likewise stained. Mr. Creger called Mr. Robertson and asked him if his dogs had been allowed in the playroom. Mr. Robertson replied that to his knowledge they had not and he was unaware of any odor.
The plaintiffs cleaned the concrete floor with ammonia, Clorox bleach, and muriatic acid. They claimed that after these cleaning attempts, they noticed water running from the curb at one end of the room out onto the gravel parking area. Plaintiffs also testified that they were unable to cure the odor problem.
Mr. Creger then made arrangements to replace the playroom carpet and to pour a new concrete slab over the old one. After the work was completed, Mr. Creger requested that Mr. Robertson come to the house on September 3, 1987. At that time he again asked Mr. Robertson about the odor. Mr. Robertson responded that he wasn't sure what could have happened in the playroom. He further stated that during the three years his family lived in the house, he personally had spent only about twelve hours in that room. Mr. Creger presented him with the bill for repairs and demanded payment. The defendants refused to pay.
The plaintiffs filed suit in Shreveport City Court on September 28, 1987. The plaintiffs sought to recover their expenses for the new slab and carpet, as well as $40.50 spent on repairing a leak beneath the lavatory in the half-bath next to the kitchen. Additionally, they sought damages for their loss of enjoyment, embarrassment and anguish, as well as attorney fees and costs. The defendants answered, claiming that the fifty-two-year-old house was sold "as is" under the sales contract and that the defects were discoverable by simple inspection.
Trial on the merits was held on December 1, 1987. The defendants represented themselves. Mr. Creger testified that he consulted several professionals about the problems. He testified that he spoke to John Porter of Porter's Carpet Cleaners. (However, the defendants filed into evidence, over the plaintiffs' objection, a letter from the president of that company stating that to his knowledge, no one connected to the company had given any advice about the matter.) Mr. Creger also testified that he spoke to two concrete professionals who said he could try cleaning the slab with muriatic acid and coating it with a sealer. However, Mr. Creger stated that he did not utilize that method because of the water leaking onto the driveway. Instead he elected to pour new concrete over the existing concrete floor. Mr. Creger testified that he did not call Mr. Robertson to the house to inspect the situation because he wanted to avoid an "unpleasant incident" and because he felt he had given the defendant ample opportunity to "tell the truth."
The plaintiffs also presented the testimony of Mrs. Creger, and Carol Burns, a family friend who visited the house immediately after the plaintiffs moved in. Mrs. Burns testified that an unpleasant odor was present in the playroom. Mrs. Creger said that the problems with the carpet disrupted her entertainment schedule.
William Johnson, a licensed general contractor, testified for the defendants. He testified that the muriatic acid could have eaten through sealant on the concrete slab and thus caused water leakage to the outside. He further stated that application of a new sealant could have resolved both the odor and leakage problems. He said pouring a new slab was an extreme and unnecessary solution for such a urine problem, and the only reasons to pour the slab would be to level out the former garage.
Mrs. Robertson also testified for the defense, as did a family friend, Elizabeth Lee *1094 Bates Smith, who frequently visited their home. The defendants also presented the testimony of John Charles Murphy, a visitor to the house who also owned a cleaning agency. They all testified that there was no offensive odor in the house.
On May 3, 1988, the trial court issued a written opinion in which it rendered judgment in favor of the plaintiffs. It awarded the plaintiffs $40.50 for the plumbing leak, $1,387.75 for the carpet and concrete, and $500 for their embarrassment, anguish, and loss of use of the home, or a total of $1,928.25. Attorney fees were denied. The trial court found that the "as is" clause in the sales contract referred only to mechanical systems in the house, and applied to flushing mechanisms, electric motors, and appliances sold with the house. A judgment in conformity with the trial court's written opinion was signed on May 5, 1988.
On appeal, the defendants urge the following assignments of error: (1) That the trial court erred in allowing recovery when the sales contract provided that the sale of the house was "as is"; (2) that the trial court erred in finding that the playroom carpet odor was a redhibitory vice and not an apparent defect readily discoverable upon simple inspection; (3) the trial court erred in allowing recovery when the defendants were not given the opportunity to remedy or repair the alleged defect; and (4) the trial court erred in awarding mental anguish damages.

"AS IS" CLAUSE
The defendants argue on appeal that the $250,000 house[1] was sold "as is" for a mere $217,500. They contend that the trial court misinterpreted the "as is" clause, which applied to the whole premises, except for the heating system and plumbing. To the contrary, the plaintiffs contend that the trial court properly applied the clause to only the mechanical systems in the home.
In its written opinion, the court found that the "as is" clause dealt only with a systems check that commonly applied to flushing mechanisms, electric motors, sewage when toilets are flushed, appliances which are sold, and the like. We find this interpretation to be in error. To the contrary, the "as is" provision applies to the entire house except those systems, which are warranted to be in normal working condition.
The contract provides, in relevant part, under the section "CONDITIONS OF SALE":
Buyer has inspected the premises and accepts them "AS IS" with the exception of the heating/air conditioning, plumbing, builtin appliances and electric systems which the BUYER has the right to inspect through himself or his designated agent at his expense prior to closing. Failure to so inspect constitutes acceptance of same. Such systems shall be "in normal working order" which is defined to mean in such order to adequately perform the task for which such systems were designed taking into account their age. Should any of such systems fail to be in "normal working order" SELLER shall place same in such order prior to deed. Should SELLER retain possession after deed he must deliver to BUYER all such systems in "normal working order." SELLER'S warranty shall not extend beyond date of closing. Exceptions are none.
In Louisiana, the seller is bound by an implied warranty that the thing sold is free from hidden defects and is reasonably fit for the product's intended use. LSA-C.C. Arts. 2475, 2476, 2520; Hob's Refrigeration & Air Conditioning, Inc. v. Poche, 304 So.2d 326 (La.1974); Rey v. Cuccia, 298 So.2d 840 (La.1974). The parties to a sale are free to limit or diminish, by express agreement, the warranty imposed by law. The seller can limit this warranty by declaring to the buyer the hidden defects at the time of the sale, or can otherwise limit his obligation to the buyer, providing he does so clearly and unambiguously. See Sanders v. Sanders *1095 Tractor Company, Inc., 480 So.2d 913 (La. App. 2d Cir.1985).
In order for a waiver of warranty to be effective, the following requirements must be met: (1) the waiver must be written in clear and unambiguous terms; (2) the waiver must be contained in the sale or mortgage document; and (3) the waiver must also be brought to the attention of the buyer or explained to him. Sanders, supra.
A sale made "as is" is not a waiver of all warranties. The vendor is not relieved of the implied warranty under Article 2520 that the thing must be fit for the use for which it is intended. The "as is" stipulation, especially in a sale of a used thing, means that the thing is not warranted to be in perfect condition and free of all defects which prior usage and age may cause. Juneau v. Bob McKinnon Chevrolet Company, 260 So.2d 919 (La.App. 4th Cir.1972); Sanders, supra.
Our examination of the language of the "as is" clause demonstrates that it is not sufficiently clear and unambiguous to constitute a waiver of all warranties. It fails to clearly state that the purchaser waives express and implied warranties, including the warranty of fitness for a particular purpose and the warranty against redhibitory vices. See Harvell v. Michelli, 500 So.2d 871 (La.App. 1st Cir.1986). Furthermore, although Mr. Creger testified he had read the paragraph, there is no indication in the record that the clause was properly explained to him and Mrs. Creger.
Based on the above, we find that the defendants' first assignment of error is without merit.

APPARENT DEFECTS

A. Playroom Carpet Odor
The defendants contend that the trial court erred in finding that the carpet odor was a redhibitory defect and not an apparent defect which the plaintiff should have readily discovered upon simple inspection. However, the plaintiffs assert that, when they initially inspected the house, the defendants' furnishings and possessions were still there. Additionally, the defendants had a variety of potpourri and scented candles which prevented the plaintiffs from accurately evaluating the odor. The plaintiffs testified at trial that they could not immediately locate the source of the odor, and they denied seeing any stains on the dark carpet until after the sale.
Article 2521 of the Civil Code provides:
Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.
A buyer is only under a duty to make an inspection which is reasonable in light of all the circumstances surrounding the sale. Whether an inspection is reasonable depends upon the facts and circumstances of each case, and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection and the assurances made by the seller. Additionally, a purchaser is not required to examine inner or hidden parts of an object, but must discover what a reasonably prudent purchaser acting under similar circumstances would have discovered. Anselmo v. Chrysler Corporation, 414 So.2d 872 (La.App. 4th Cir.1982).
If the defects complained of by the purchaser are apparent, that is, such as the purchaser might have discovered by simple inspection, the purchaser cannot recover. The buyer is under no obligation to inspect with expertise or to deface the thing purchased while inspecting it, particularly when damage can be fully determined only by removal of the surface coverings. Dodd v. Tucker, 528 So.2d 644 (La.App. 2d Cir.1988).
The plaintiffs were alerted to the existence of an unpleasant odor during their two prepurchase visits to the house. However, they testified that they were initially unable to locate the odor source. Only after the cleaning failed to eliminate the odor did the plaintiffs rip up the carpet and examine its underside. The back of the carpet was covered by a series of enormous stains, as amply demonstrated by the *1096 photographs admitted into evidence by the plaintiffs. Mr. Creger testified that he discovered that the underlying tack strip was impregnated with crystalized urine, and that the walls and concrete floor under the carpet were likewise stained. The plaintiffs filed into evidence pieces of the tack strip and a sample of the carpet which confirm the plaintiffs' descriptions.
Mr. Creger testified, without any hearsay objections, that he contacted professionals who informed him that the urine crystals could have soaked into the porous concrete and that a change in the humidity or a spill upon the floor could reactivate the odor.
Based upon the circumstances of this case, we find that the odor in the playroom carpet was not an apparent defect such that the plaintiff should have discovered it readily upon a simple inspection. The plaintiffs noticed a questionable odor in the home of the defendants, who were burning scented candles and utilizing potpourri. Also, the defendants' furnishings were still in the house at the time. Thus, the plaintiffs were unable to determine if the odor (at best, a difficult thing to isolate) was a quality of the house or of its contents.
Out of politeness and respect for the defendants' sensibilities, the plaintiffs did not accost the defendants with questions about the odor. Even if the plaintiffs had questioned them concerning the smells, they would have been unable to ascertain the extent of the damage without pulling up the carpet to examine its hidden features. A reasonably prudent buyer, who was lacking in expertise in carpet cleaning, would have been unable to appreciate the seriousness of the situation. Accordingly, we conclude that the odor problem enumerating from the carpet and floor was not an apparent defect.

B. Plumbing Repairs
Additionally, the defendants challenge the award made by the trial court for the plumbing repairs under the lavatory in the half bath next to the kitchen. Mr. Creger testified that the leak was concealed behind the wallpaper, which was mildewed, soft, and "squishy". He testified that the leak appeared to have existed for some time.
Mr. Creger testified that the leak was only discovered in the course of routine housework when wiping the walls. It was discovered that the area was wet and soft. Upon examination, they discovered that there was nothing behind the wallpaper, which was stained.
The evidence indicates that the leak was not detectible by a reasonable visual inspection, and thus was not an apparent defect. See LSA-C.C. Art. 2521.
In support of the defendants' contention that the leak developed subsequent to the sale, they admitted into evidence an invoice for plumbing repairs which indicated that on July 31, 1987, repairs costing $376.10 were made. Mr. Creger admitted under cross examination by Mr. Robertson that Mr. Robertson had told him that on the day of closing a plumber had repaired a leak under the sink in the upstairs bathroom and a leak in the pipe from the commode in the half bath in question.
The evidence indicates that the leak discovered in the downstairs bath had been in existence for some time, as evidenced by the mildew. The fact that the defendants had engaged a plumber to make repairs on the day of closing does not establish that the leak was not in existence at that time. It merely demonstrates the concealed nature of the leak. Given the specific circumstances surrounding this plumbing leak, including the fact that it was repaired only ten days after the plaintiffs moved into the house, and Mr. Creger's uncontroverted testimony that the area surrounding the leak was mildewed, we find that the trial court properly concluded that this hidden defect existed at the time of the sale.
This assignment of error has no merit.

OPPORTUNITY TO REMEDY AND COST OF CORRECTIVE MEASURES
The defendants complain that the plaintiffs failed to give them an opportunity to examine and remedy the playroom situation *1097 themselves prior to the plaintiffs electing to make their extensive renovations. They contend further that the plaintiffs failed to present evidence justifying their replacement of the playroom carpet and the pouring of a new slab.
A tender of the object sold for repair of vices, while usually a condition precedent to an action of redhibition, is not required to maintain an action in quanti minoris. Broussard v. Breaux, 412 So.2d 176 (La.App. 3rd Cir.1982), writ denied 416 So.2d 115 (La.1982). As the plaintiffs sued for a reduction in price, not rescission of the sale, they were not required to allow the defendants a chance to remedy the situation.
However, the plaintiffs were required to prove by a preponderance of the evidence the amount which they were entitled to recover. The jurisprudence is established that the proper amount of the reduction in price under LSA-C.C. Art. 2541 is the amount of difference between the actual sales price and the price a reasonable buyer and seller would agree upon, knowing of the defect. Cost of repairs or replacement can be one method of arriving at the theoretical price. Gates v. Dykes, 338 So.2d 1190 (La.App. 2d Cir.1976).
In seeking to prove the necessity for repairs and the cost thereof, plaintiffs relied, to a substantial extent, upon hearsay information provided to Mr. Creger by "experts." The defendants failed to object to Mr. Creger's hearsay recitation of this information.
A rule of evidence not invoked is waived, and hence a failure to object to evidence waives objection to its admissibility. A failure to object to hearsay or secondary evidence when admitted at the trial constitutes a waiver of the objection and the evidence is admissible; such evidence may then be considered and given probative effect. The aggrieved party may not subsequently upon appeal urge that such evidence was actually inadmissible. Richard v. Southwest Louisiana Hospital Association, 383 So.2d 83 (La.App. 3rd Cir. 1980), writ denied 385 So.2d 274 (La.1980); Taunton v. Cane Air, Inc., 405 So.2d 624 (La.App. 3rd Cir.1981).
Because the defendants failed to object to the hearsay evidence presented by Mr. Creger, the trial court was properly entitled to give the information probative weight. This is not to say, however, that the plaintiffs carried their burden of proof on this issue.
Mr. Creger testified that of the "experts" he consulted, neither Mr. Porter of Porter's Carpet Cleaners or Grady Golden of Builder's Supply ever inspected the house or made an "iron clad guarantee or recommendation." They merely suggested various methods of remedying the situation. Pursuant to his discussions with them, Mr. Creger purchased a sealant. However, he did not utilize it because after he scrubbed the slab with muriatic acid he noticed liquid flowing from the inside of the playroom to the outside. Mr. Creger testified that at this point he decided to repour the concrete. He further testified that Lee Postell of Atlas Paving came out to look at the situation and "concurred that probably [repouring concrete] was the thing to do."
Additionally, we note that Mr. Creger testified that when he had the concrete slab repoured, the playroom, formerly a garage, was leveled out. This required the pouring of a slab which was five to five and one half inches thick on one end and two inches thick on the other. He admitted that he knew prior to the sale that the room was not level. Mr. Creger further admitted that he never noticed any evidence of water seepage from the outside of the house into the playroom. Although Mr. Creger denied that there was any connection between the pouring of the slab and the new driveway, he testified that he had a concrete driveway poured on top of the old gravel one and that the new one was higher than the original playroom slab. Thus, had the playroom slab not been raised, a potential for drainage problems would have been created by the new driveway.
Mr. Johnson, the building contractor who testified on behalf of the defendants, testified that he had previous experience dealing *1098 with such a urine stain. He testified that a sealant should have adequately remedied the odor problem, as well as any drainage difficulties. The only reason he could find for repouring the concrete was to level out the sloping garage floor. Furthermore, he testified that the height of the new driveway would have caused drainage problems if the playroom slab had not been raised. As stated heretofore, Mr. Johnson specifically testified that the pouring of a new slab was unnecessary and unjustified to correct an odor problem.
We find that under the circumstances of this case it would be grossly inequitable and unfair to allow the plaintiffs to recover from the defendants the cost of the pouring of the new slab in the playroom. This is particularly true in light of the fact that the plaintiffs seized the occasion to greatly improve the room by leveling the floor through the pouring of almost six inches of concrete at one end. Additionally, we note that even Mr. Creger, in his hearsay recitations, was unable to clearly testify that any "professional" specifically recommended the pouring of the concrete, rather than using a sealant.[2] The record is devoid of any evidence that any drainage problems in fact existed. The jurisprudence is settled and logic dictates that a purchaser may not recover for repairs which encompass work for more than what is necessary to repair the defects and make the structure sound. A. Copeland Enterprises v. Harimaw, Inc., 528 So.2d 707 (La.App. 5th Cir.1988), writ denied 531 So.2d 475 (La.1988).
The same principle applies to the new carpet for which the trial court allowed the plaintiffs full recovery. The original carpet in the playroom was apparently about three years old, and visibly stained. Mrs. Creger testified that she failed to observe any stains on the dark blue carpet until after the sale because the colors in the room were dark and the room was dimly lit. However, the plaintiffs should have known of the stains by virtue of the simple inspection they were obligated to perform as reasonably prudent buyers. Thus, the plaintiffs knew or should have known they were not obtaining new carpet in the playroom at the time of the sale. To allow them to recover the full cost of the new carpet would unjustly enrich them at the defendants' expense.
In order to render a fair judgment that would accomplish justice for all parties, we must accordingly reduce the award granted by the trial court for the concrete and carpet. The award of $775 for the paving and concrete is deleted and the award of $612.75 for the carpet is reduced to $500.

NONPECUNIARY DAMAGES
The final issue raised by the defendants is whether the plaintiffs are entitled to damages to compensate them for their loss of use, embarrassment and anguish. The plaintiffs contend that the odor embarrassed them, particularly during their first week of occupancy when visitors stopped by, and forced them to curtail their "entertainment schedule." They claim that the repairs in the playroom frustrated their plans to host a children's slumber party and a friend's surprise birthday party. The plaintiffs further testified that they purchased the house because they desired an "older" home with "historical and aesthetic value," and they were greatly attracted by the neighborhood and school districts.
There has long been uncertainty in the jurisprudence as to whether purchasers bringing a redhibition suit are permitted to recover nonpecuniary damages. Formerly, LSA-C.C. Art. 1934(3) was the controlling article. It provided, in relevant part:
Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an *1099 engagement for a work of some of the fine arts, are objects and examples of this rule.
In Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), the Supreme Court found that where an object, or the exclusive object, of a contract is physical gratification (or anything other than intellectual gratification), nonpecuniary damages as a consequence of nonfulfillment of that object are not recoverable. In the recent case of Lafleur v. John Deere Co., 491 So.2d 624 (La.1986), the Supreme Court reaffirmed its Meador interpretation of Art. 1934(3), finding that "nonpecuniary damages are not allowed in a simple breach of contract case unless the contract has for its object `the gratification of some intellectual enjoyment....'" Lafleur, supra, at 630.
As of January 1, 1985, Civil Code Art. 1998 replaced Art. 1934(3). It provides:
Damages for a nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify nonpecuniary interests and, because of circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended through his failure, to aggrieve the feelings of the obligee.
In Lafleur, the Supreme Court discussed the revision. It stated that "with minor language changes the Meador interpretation of LSA-C.C. Art. 1934(3), that nonpecuniary damages are recoverable only where the contract has for its object gratification of intellectual enjoyment, has been incorporated in LSA-C.C. Art. 1998 of the application's revision passed in 1984." The court additionally stated that the specific revisions in the codal article "serve to clarify and make more certain under the law the Meador resolution of the pertinent legal issue under the former Art. 1934(3)."[3]
In the instant case, the contract for the sale of the house, although for the sale of a fine home in a fine neighborhood, was not a contract "... intended to gratify nonpecuniary interests...." LSA-C.C. Art. 1998. However, even if damages for mental anguish were available, the trial court award of $500 is not supported by the evidence.
The plaintiffs purchased a house in which they discovered two problemsa very minor plumbing leak in the half bath and an odor coming from the carpet in one room. The plaintiffs, upon discovery of the odor source, took swift and decisive action to remedy the situation. This rapidity is demonstrated by the dates on the bills submitted into evidence.[4] Any loss of use of the playroom lasted slightly more than two weeks. (The record does not demonstrate that the plaintiffs suffered the loss of use of the house at any time.)
Plaintiffs alleged that two social events, their young daughter's slumber party and a surprise party for a friend, were postponed because of the problem in the playroom and resulted in mental anguish. This assertion is not supported by the evidence. The evidence demonstrates that the dates for both functions were flexible. Also the plaintiffs had just moved into the home, and were in the process of unpacking and getting settled. Any delay in scheduling these parties due to the defects in the playroom was minimal and certainly does not justify an award of damages. At most, the plaintiffs suffered "mere worry and vexation," which is not a compensable nonpecuniary loss.[5] Furthermore, their vexation was of an extremely brief duration.
The record does not show that the plaintiffs proved by a preponderance of the evidence that they suffered any injury as a result of the playroom repairs. Thus, we *1100 find that the trial court's award of $500 damages is not warranted by the evidence.

CONCLUSION
The judgment of the trial court is amended to delete the $500 award for loss of use, embarrassment, and anguish, and the $775 award for concrete paving. The award for carpet is reduced to $500. In all other respects, the judgment of the trial court is affirmed. Costs are assessed equally to plaintiffs and defendants.
AMENDED. AFFIRMED AS AMENDED.
NOTES
[1] Mrs. Robertson testified that she and her husband purchased the house in 1984 for $211,000. Subsequently, they spent $42,000 on renovations.
[2] In fact, on page 83 of the record the following colloquy occurred between Mr. Robertson and Mr. Creger:

"Q: Who recommended pouring concrete?
A: No one specifically said we should do that...."
[3] We note, however, that the language in Lafleur construing Art. 1998 has not gone without criticism. See Comment, Recovering Nonpecuniary Damages for Breach of Contract Under Louisiana Law, 47 L.Law Rev. 541 (1987).
[4] The carpet bill is dated August 20, only five days after the plaintiffs took possession of the house. The concrete paving bill is dated August 31, and it contains a notation indicating that the balance was paid the following day.
[5] See comment (e) of LSA-C.C. Art. 1998.