JACHARLES R. JONES, Judge.
The Appellant, Couhig Southern Environmental Services of New Orleans, Inc. (hereinafter “Couhig”), appeals the judgment of the district court rescinding the sale of a home in favor of the Appellee, Geraldine Billups. The judgment of the district court cast Couhig, Kathleen Lyons and Oliver Lyons in solido for damages totaling $79,628. For the following reasons, we affirm in part, reverse in part, and render.
Facts
In 1999 Ms. Billups purchased a townhouse located at 6201 Morrison Road in New Orleans, Louisiana. The townhouse was purchased from Kathleen and Oliver Lyons. Mrs. Lyons had previously retained the services of Couhig to inspect her property and to prepare a Wood Destroying Insect Report (hereinafeter ‘WDIR”). The property was inspected and Norman Briscoe, an employee of Couhig, prepared the report. Mr. Briscoe reported that there was no visible evidence of wood destroying insects and signed the WDIR. The Lyonses’ townhouse was previously under contract with Hookfin Pest Control and had been since 1997.
*502 |¡Jn 1999, the toilet was replaced in the bathroom as a result of Hookfin’s treating for termite damage. On the same day Hookfin treated for termites, Ms. Billups met with Mrs. Lyons at which time Ms. Billups was given a property disclosure form created by Latter & Blum for the Lyonses. The form stated that the property did not have any wood destroying insects.
On May 26, 1999, at the act of sale, many documents exchanged hands between Ms. Billups and the Lyonses, one of which was the WDIR prepared by Couhig.
Approximately eight days after closing, Ms. Billups attempted to renovate the property when she discovered termites swarming from the sheetrock in the master bathroom. Upon this discovery, Ms. Billups instructed her son to go into the attic where he found numerous termite wings. Ms. Billups immediately called Couhig who sent Mr. Briscoe out to inspect the premises. Ms. Billups maintains that she was informed by Mr. Briscoe that he did not perform the previous inspection but that the inspection was preformed by Paul Raven, an unlicensed employee of Couhig.
Michael Prentice of the Structural Pest Control Division of the Louisiana Department of Agriculture & Forestry inspected the premises on more than one occasion. Mr. Prentice concluded that there was active termite infestation and extensive termite damage. Mr. Prentice made his findings available to Couhig.
Procedural History
Ms. Billups filed in Civil District Court for the Parish of Orleans a Petition for Rescission of Sale and for Damages against the Lyonses and Couhig. The Leader Mortgage Company (hereinafter “Leader”), the master servicer for Louisiana’s first time homebuyer program, filed a separate suit against Couhig for ^damages, joining Gilyot Mortgage Corp. (hereinafter “Gilyot”), the originating lender, as a defendant. The suits were consolidated. Thereafter, Leader intervened in Ms. Billups’ original suit claiming a right to receive any damages due to Ms. Billups until her loan was paid in full. The district court granted Couhig’s Motion for Partial Summary Judgment, dismissing Ms. Bill-ups allegations of fraud against it.
During trial, Ms. Billups stipulated to liability to Leader on her note and mortgage, resulting in the transfer and consolidation of a foreclosure action with the other two actions and the entry of a consent judgment against Ms. Billups for $73,565, interest from July 1, 1999 and 25 percent attorney fees not to exceed $90,000. As a result of this consent judgment, Leader converted its foreclosure action to an ordinary action.
Thereafter, the district court rendered judgment in favor of Ms. Billups against the Lyonses and Couhig, in solido, resulting in the rescission of sale and $29,628 in general damages; $50,000 in special damages; and $25,000 in attorney fees. The Lyonses were found to be 30% liable and Couhig was found to be 70% liable.
Leader filed a Motion for New Trial whereby the district court entered an amended judgment in which it found that the rescission of the sale was proper and further ordered that the sale by Gilyot to Leader of the promissory note executed by Ms. Billups be rescinded.
Couhig’s First Assignment of Error
In its first assignment of error, Couhig argues that the district court erred in finding that Couhig’s negligence was the cause-in-fact of the damages sustained by Ms. Billups. Couhig maintains that Ms. Billups failed to prove that she actually 14relied on the WDIR when deciding whether to purchase the Lyonses’ proper *503 ty. Couhig further argues that Ms. Bill-ups admitted at trial that she never read the WDIR and therefore she could not have relied on it to purchase her home.
Ms. Billups maintains that without a “clean” WDIR, Gilyot would not have loaned Ms. Billups money to purchase the property. Ms. Billups testified at trial that had she been aware of the condition of the property, she would not have purchased it.
Couhig further relies on the language of the WDIR arguing that it did not state that the property was “termite free” as argued by Ms. Billups and that the following provision in the WDIR, capitalized in bold print, supports Couhig’s argument that it never concluded that the property was termite free. The provision states:
WARNING: THE INSPECTION DESCRIBED HEREIN HAS BEEN MADE ON THE BASIS OF VISIBLE EVIDENCE IN READILY ACCESSIBLE AREAS AND THIS REPORT IS SUBMITTED WITHOUT WARRANTY, GUARANTEE OR REPRESENTATION AS TO CONCEALED EVIDENCE OF INFESTATION OF DAMAGE OR AS TO FUTURE INFESTATION. THIS IS NOT A TERMITE FREE CERTIFICATE.
However, the WDIR on its face speaks for itself despite the above warning. Clearly on the WDIR box 9A is checked. Box 9A reads, “[n]o visible evidence of wood destroying insects observed.” The WDIR was signed by Norman Briscoe, however the record reflects that Mr. Bris-coe admitted at trial that he did not perform the initial inspection.
Couhig’s argument that Ms. Billups would have purchased the Lyonses’ home regardless of the WDIR is unfounded. The district court reasoned, and we agree, that “the scope of the duty that Couhig owed to Ms. Billups was to use treasonable care and competence in obtaining or ascertaining facts and/or in communicating the facts of the damages sustained by [Ms.] Billups.” The record supports that there was indeed termite infestation to the property while the Lyons-es owned it, after Ms. Billups purchased it, and during Couhig’s inspection. We find that there is no need to offer an in-depth discussion as to cause-in-fact because this argument lacks merit. We take into consideration the face of the WDIR in connection with the testimony of Mr. Briscoe, Ms. Billups, and Mr. Prentice, and we find no error by the district court in concluding that the WDIR facilitated by Couhig did have substantial causation in Ms. Billups’ purchase of the Lyonses’ property.
Couhig’s Second Assignment of Error
In its second assignment of error, Couhig maintains that the district court was erroneous in casting Couhig with 70 percent liability. Couhig furthers its argument by maintaining that since the district court also found the Lyonses to be in bad faith, the allocation of fault was improper.
We find that although the Lyonses were at fault in not disclosing the termite damage, Couhig owed a heightened degree of responsibility to Ms. Billups when inspecting the property. The district court found that Couhig violated Louisiana’s structural pest control laws by issuing the inaccurate WDIR and we agree. Although the main issue surrounding the decision in Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993), is the privity between the parties, the Court found that the termite inspector, who issued the wood destroying insect report to the vendor of the dwelling, owed a duty to the purchasers of the dwelling to use reasonable care and competence in obtaining or ascertaining facts for the report. Though no privity of contract existed between the inspector and *504 the purchasers, | (¡where the inspector received compensation for preparing the report and held itself out to be a specialist, the inspector knew that the report would be given to the purchasers and that the purchasers would rely on the report.
In the instant case, Couhig was very much aware of the use of a WDIR. The district court established that the credibility of the witnesses on behalf of Couhig was questionable. Mr. Briscoe testified that he did inspect the attic; however, Mr. Prentice of the Louisiana Department of Agriculture & Forestry rebutted this testimony. Mr. Prentice testified that three months after the WDIR was prepared his inspection of the property revealed termite damage and active termite infestation. Mr. Prentice was qualified as an expert, and therefore, the district court was reasonable in concluding that Couhig violated Louisiana’s Pesticide and Structural Pest Control laws.
Although the Lyonses did have a responsibility to truthfully report the condition of the property, their responsibility was not as injurious as that of Couhig. The Lyonses were in bad faith in reporting that there were no termites on the disclosure prepared by Latter & Blum; however, at the act of sale, Gilyot, Leader, and Ms. Billups relied on the WDIR to close the loan.
Taking into consideration the roles of Couhig and the Lyons, the allocation of 70 percent fault to Couhig, which holds itself out as a professional inspection corporation, was not an erroneous determination by the district court.
Couhig’s Third Assignment of Error
In its last assignment of error, Couhig argues that Ms. Billups’ award of $29,628 in special damages was excessive. The district court has great discretion in assessing damages, and the trial court’s finding in this regard will not be disturbed |7on appeal in the absence of a clear abuse of discretion. Lacy v. ABC Ins. Co., 97-1182 (La.App. 4 Cir.4/1/98), 712 So.2d 189.
We find that Couhig was erroneous in reporting the amount and extent of damages. The judgment of the district court awards Ms. Billups general damages in the amount of $29,628 and special damages in the amount of $50,000, totaling $79,628.
Ms. Billups purchased the house for $74,000. She submitted itemized reports indicating that she incurred $29,627.96 in expenses for rental property and construction done to her new home prior to the discovery of termite infestation. Mr. William G. Pique, an expert in general contracting and estimating repairs to damaged residential property, testified at trial that a minimum cost of $30,000 was needed to repair Ms. Billups’ home. Ms. Billups submitted into evidence an estimate of $32,865.72 from Tyrone Mather-sone, a contractor, which indicated needed repairs to the property all caused by termite damage. Further, Ms. Billups maintains that she can no longer qualify as a first-time homebuyer and she will be unable to receive a low interest loan rate due to her damaged credit. Ms. Billups proved at trial through her testimony that she did indeed suffer from mental anguish, inconvenience, and aggravation as a result of the termite damage to her new home. In Brouillette v. Ducote, 95-1000 (La.App. 3 Cir. 4/24/96), 674 So.2d 310, the Third Circuit found that the district court was clearly wrong in failing to award general damages for mental anguish and inconvenience suffered by the purchasers as result of termite infestation which caused damage to their new home. The court determined that the lowest award that the trial court could have granted to the purchasers was $2,500 each. For several months, the purchasers could not sleep in their bed *505 room and had to sleep on mattresses on the floor of their living |sroom because mud from termites was falling from the ceiling onto their bed. The purchasers were first time home buyers, and the experience proved to be traumatic for them.
Couhig’s argument that the damages awarded to Ms. Billups are excessive is without merit. Couhig also argues that Ms. Billups failed to mitigate her damages. We also find that this argument lacks merit.
Ms. Billups’ First Assignment of Error
In an answer to the appeal, Ms. Billups argues that the award of the district court should be increased to include her damages from loss of first-time home-buyer’s status and legal interest. We find that the district court made Ms. Billups whole again. She was awarded the rescission of the sale of her house, and general and special damages as a result of the loss. Although Brent Edwards with Alternative Lending Services testified that Ms. Bill-ups’ interest rate and down payment will be higher if she were to purchase another piece of property as a non-first-time home-buyer, this Court, as the district court, can only speculate as to what that rate and down payment would be. The district court would have been in error to award Ms. Billups any additional damages on this speculation, as would this Court if we were to increase the award. La. Civ Code Art. 2315 requires that the victim be returned to the best position she was in before the damage-causing act occurred. Neither the district court nor we can repair Ms. Bill-ups’ damaged credit.
The district court is in a better posture having reviewed the evidence and the testimony to determine the amount of damages. Hence, we find that those awards were not excessive and so low as to “shock the conscious” of this Court. Ross v. City of New Orleans, 2000-1879 (La.App. 4 Cir. 11/21/01), 808 So.2d 751.
|aMs. Billups’ Second Assignment of Error
In further answer to Couhig’s appeal, Ms. Billups argues that the district court erred in granting Couhig’s Motion for Partial Summary Judgment on the issue of fraud. Ms. Billups supports her argument by referring to the trial testimony of Mr. Briscoe and the fact that Couhig allowed Paul Raven, an unlicensed person, to inspect the property, prepare the WDIR, and sign Mr. Briscoe’s name.
In determining whether summary judgment is appropriate, appellate courts review the evidence de novo. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. Therefore, this Court must consider the pleadings filed by both Couhig and Ms. Billups in order to determine whether the district court erred in granting Couhig’s motion.
According to La. Civ.Code Art.1953, “fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss of inconvenience to the other party. Fraud may result from silence or inaction.” La.Code Civ. Pro. Art. 856 states that “when pleading- fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity.”
After review of the record, this Court finds that the -district court did not err in granting the Partial Motion for Summary Judgment on behalf of Couhig on the issue of fraud. Ms. Billups had the burden of proving that Couhig behaved fraudulently. In order for Ms. Billups to establish fraud, she would have to prove not only the intent of Couhig to misrepresent the WDIR, but also that Couhig was going to be unjustly advantaged by falsifying the WDIR, or that Couhig Imintentionally caused her *506 the loss of her home. We find that Couhig did indeed intentionally misrepresent the WDIR; however, after careful review of the evidence and the testimony, we cannot conclude that Couhig’s actions caused it any gain or that it purposefully set out to inconvenience Ms. Billups. No matter what condition Couhig reported the property, it was going to be paid for rendering its services. Whether there was any questionable relationship between the Lyonses and Couhig was not proven by Ms. Billups, nor can we assume that one existed. Therefore, this Court finds that the district court was not manifestly erroneous in finding that Couhig’s actions did not amount to fraud.
Leader’s Assignments of Error
In the district court, Leader-intervened in Ms. Billups’ original lawsuit against Couhig and the Lyonses asserting its right to receive any damages due to Ms. Billups until all amounts due under her loan had been paid in full. Now on appeal, Leader seeks to amend the judgment of the district court to modify the portion of Ms. Billups’ judgment against the -Lyonses from a rescission of sale to a price reduction. Originally the district court found that Gilyot was liable to Leader under the terms of the Standard Loan Origination Agreement. It later modified its judgment via motion of Leader to include a rescission of the sale of the note from Gilyot to Leader. Leader argued and still maintains that the title is clouded because of the rescission of sale from the Lyonses to Ms. Billups.
We find that Gilyot loaned Ms. Billups $73,565 to purchase her home. Leader purchased the loan from Gilyot. As a result of the termite infestation, Ms. Bill-' ups defaulted on her loan. Now, Leader holds the defaulted note. The judgment of the district court rescinds the sale from the Lyonses to- Ms. Billups,- but fails to address how Ms. Billups will satisfy her debt to Leader. Leader argues that it is Inunable to foreclose on the property because Ms. Billups has subsequently filed for bankruptcy. La. Civ. Code Art. 2541 specifically addresses when a price reduction may be awarded, rather than rescission of the sale, and provides that:
A buyer may choose to seek only reduction of the price even when the red-hibitory defect is such as to give him the right to obtain rescission of the sale.
In an action for rescission because of a redhibitory defect the court may limit the remedy of the buyer to a reduction of the price.
The Court in Destefano v. Crump, 96-951 (La.App. 5 Cir. 4/9/97), 694 So.2d 424, found that the ultimate question of existence of redhibitory vice and the amount awarded for reduction of the purchase price are questions of fact for the trial judge, which should not be disturbed in absence of manifest -error or abuse of wide discretion afforded to her.
Although Leader was awarded $50,000 in damages from Couhig, we are of the opinion that Couhig is one hundred percent liable to Leader. The record indicates that the district court was presented with evidence that the Lyonses filed for bankruptcy under Chapter 7 of the Bankruptcy Code in 1996 and subsequently filed under Chapter 13. This indicates that the Lyonses do not have the means to repay Ms. Billups the $73,565 she borrowed to purchase the home, yet, Leader has a judgment against Ms. Billups for the amount due on her note. We find that the district court was clearly wrong in not making Leader whole on the mortgage note. In accordance with Destefano, “[a]s noted in the comments to La. C.C. art. 2541, the price reduction that may be demanded under La. C.C. art. 2541 is the difference between the sale price and the *507 price that a reasonable buyer would have paid if he had known of the defects.” Capitol City Leasing Corp. v. Hill, 404 So.2d 935 (La.1981). One of the principal elements in formulating a price reduction of l1Rthe purchase price is the cost of repairs. Griffin v. Coleman Oldsmobile, Inc., 424 So.2d 1116 (La.App. 1 Cir.1982). In sales of immovable property the amount to be awarded is the amount necessary to convert an unsound structure into a sound one. Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959), Id. at pp. 4-5, 694 So.2d at 426.
Mr. Matherson testified at trial and provided the district court with an estimate totaling $32,865.72 to repair the property. Our calculations indicate that the worth of the home now, and when Ms. Billups purchased it, is $40,790.28. We compute this figure by taking the purchase price of the home, $74,000, and subtracting the estimated cost of repair of $33,209.72, thus totaling $40,790.28. We vacate the portion of the judgment rescinding the sale of the home between Ms. Billups and the Lyons and render judgment reducing the sales price of the property to $40,790.28.
Decree
For the reasons stated herein, we reverse the portion of the judgment rescinding the sale of the home as to Geraldine Billups and Kathleen and Oliver Lyons and reduce the original purchase price to $40,790.28. In all other respects, the judgment of the district court is affirmed.

REVERSED IN PART; RENDERED IN PART; AND AFFIRMED IN PART.