856 So.2d 21 (2003)
Matthew R. TARIFA
v.
Iris D. RIESS, Eleanor D. Lund, Edgewood Pest Control, Inc., et al.
No. 2002-CA-1179.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 2003.
Opinion Granting Rehearing September 3, 2003.
Robert A. Mathis, Newman, Mathis, Brady, Wakefield & Spedale, APLC, Metairie, LA, for Plaintiff/Appellant.
*22 Alan Abadie, Chalmette, LA, for Defendants/Appellees (Iris Riess and Eleanor Lund).
Edward E. Reynolds, Crawford A. Rose, III, Law Offices of Edward E. Reynolds, New Orleans, LA, for Defendants/Appellants (Edgewood Pest Control Co., Inc. and The Louisiana Pest Control Insurance Company).
William E. Wright, Jr., Margaret L. Sunkel, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, LA, for Third-Party Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS SR., Judge MICHAEL E. KIRBY).
MICHAEL E. KIRBY, Judge.
In this redhibitory action for a reduction of the purchase price of a home, the trial court awarded the Plaintiff/Purchaser, Mathew Tarifa ("Tarifa"), the sum of $20,000.00, which was his cost in repairing the home in the way he saw fit. The trial court also found the notary who passed the act of sale liable to the Defendants/Third Party Plaintiffs/Vendors, Iris D. Riess and Eleonor D. Lund ("Riess" and/or "Lund"). We reverse the finding that the attorney/notary is liable, amend the assessment of liability, recalculate the award according to La. C.C. art. 2520 and affirm.

STATEMENT OF THE FACTS
The plaintiff, Mathew Tarifa, lived with his parents across the street from the Property in question, at 2812 Marietta St., Chalmette, Louisiana. The plaintiff was a friend of his next door neighbor, Ms. Hildred Davidson. In 1998, Ms. Davidson passed away and ownership of her home passed to her two daughters Iris Reiss and Eleonor Lund. The purchaser/plaintiff and the sellers, Ms. Reiss and Ms. Lund, had known each other for all of the purchaser's life.
Upon finding out from his mother that Ms. Reiss and Ms. Lund would be willing to sell the property located at 2813 Marietta St., Chalmette, Louisiana (the "Property") for the sum of $45,000.00, he decided he would purchase it for a residence. The plaintiff entered into an Agreement to Purchase the Property from Riess and Lund on February 16, 1998.
The Purchase Agreement was executed at Gulf Coast Bank. Mr. Riess provided the Purchase Agreement form and he filled in the handwritten portions including the statements that "THIS HOUSE IS SOLD IN `AS IS' CONDITION" and "ALL COST IN CLOSING THIS SALE WILL BE PAID BY THE PURCHASER." Mr. Riess chose the "as is" language. Riess and Lund requested the "as is" language because they "just did not want to be bothered with painting and remodeling a house to try and get more money for it." At the time the Purchase Agreement was confected there was no discussion about a waiver of redhibition.
The Act of Sale took place on March 25, 1998, with Simone acting as the notary thereto. Simone is an attorney licensed in Louisiana with experience in representing banking institutions in real estate transactions and Omni Bank is his client. Simone acted as the closing attorney on the sale of the Property from Riess and Lund to Tarifa at the request of Omni Bank, the bank through which Tarifa arranged financing for the purchase of the Property.
On March 23, 1998 at 12:48 p.m., Omni Bank faxed the closing documentation to Simone's office. However, Simone's office only received the bottom portion of what is now known to be a copy of the Purchase Agreement. The transmitted portion did not contain the contested "as is" language or the language relating to the payment of *23 closing costs. After receiving the closing information from Omni Bank, Simone faxed the information to Magnolia Title Agency for preparation of a title abstract. In conformance with his duty to Omni Bank, Simone analyzed the Abstract and took the necessary measures, including obtaining an amended Affidavit of Death & Heirship in the Successions of John Leroy Davidson and Hildred Carpenter Davidson, to ensure that there was clear title to the Property. Thereafter, he prepared the Settlement Statement and Act of Sale in conformance with the information provided. Since he had not received the complete Purchase Agreement, he did not include the "as is" language in the Act of Sale nor did the Settlement Statement provide for the purchaser to pay all of the closing costs.
The Act of Sale on the Property took place on March 25, 1998 at Omni Bank. Present at the Act of Sale were Eleonore Lund, Iris Riess, Mr. Riess, Mathew Tarifa, Tarifa's father and Stephen Simone, the notary. At the Act of Sale Simone first went through the Settlement Statement. While he was going through the Settlement Statement Mr. Riess called to Simone's attention that the Sellers, Riess and Lund, were not to pay any of the closing costs. Simone amended the Settlement Statement to reflect this change. Thus, contrary to custom, Riess and Lund did not pay any closing costs. Each seller received a check for exactly one-half the sale price. Thereafter, Simone went through the Act of Sale. At no time during the closing did any of the parties thereto tell Simone that the Property was to be sold "as is." Neither Lund nor Riess nor Riess' husband, the author of the "as is" language, inquired about or discussed the inclusion of an "as is" provision at the closing.
Also, at the closing of the Act of Sale, Riess and Lund submitted to the plaintiff's lender, Omni Bank, a clean termite certificate issued by Edgewood Pest Control, Inc. The house on the Property had been under contract since April 16, 1980 with Edgewood Pest Control, Inc. (hereafter "Edgewood") for termite eradication. Plaintiff alleged he was told by sellers that the house was under termite contract and that there were no termite problems in the house.

REDHIBITION ACTION
Subsequent to the closing, Tarifa discovered extensive termite damage and active termites in the Property. The Louisiana Department of Agriculture inspected the Property on May 7, 1998 and found live termites in the house. As a result of the termite damage, the house was unsafe and unfit to live in as well as subject to possible cave-in.
On August 27, 1998, Tarifa brought a suit for redhibition and damages naming Riess, Lund and Edgewood Pest Control, Inc. as Defendants. On September 15, 1998, Riess and Lund asserted a cross-claim against Edgewood as well as a third party claim against Simone. The allegations against Simone are that he should have insured that he had the complete Purchase Agreement and that he had a duty to and should have prepared the Act of Sale in conformance with the Purchase Agreement, specifically including the "as is" language. The claim by Riess and Lund against Simone was for indemnity only. Thus, Simone could only be found liable to the extent Riess and Lund were found to have liability to Tarifa.
The entire matter went to trial on September 26, 2001. On October 16, 2001, the trial judge rendered Judgment in favor of Plaintiff Tarifa and against Edgewood in the amount of $20,000.00 plus legal interest and costs. Concerning the third party *24 demand, the trial court further found in favor of Riess and Lund and against Simone in the amount of $2,500.00 plus legal interest and costs, even though Riess and Lund had not been found to have any liability to Tarifa.
On October 26, 2001, Simone filed a Motion for New Trial or, in the alternative, Request for Written Reasons for Judgment. By Judgment signed November 30, 2001, the trial court denied Simone's Motion for New Trial. The trial court agreed to give, in writing, its findings of fact and reasons for Judgment against Simone pursuant to La. C.C.P. art.1917. The trial court never issued any written reasons.[1] Simone filed a Motion for Suspensive Appeal.

LEGAL ANALYSIS
Normally, the appellate court standard of review for factual findings is that of manifest error. Nevertheless, when the trial court commits legal error, de novo review is triggered. Hoskins v. Hoskins, 36,031 (La.App. 2 Cir. 4/5/02), 814 So.2d 773; Guillory v. Wal-Mart Stores, 2001-127 (La.App. 3 Cir. 10/3/01), 796 So.2d 772; Roger v. Dufrene, XXXX-XXXX (La.App. 4 Cir. 9/9/98), 718 So.2d 592.
Pursuant to a third party demand for indemnity made by the vendors, the trial court awarded $2,500.00 plus legal interests and costs at the expense of the notary who passed the act. Nevertheless, the trial court did not find the vendors to be liable to the plaintiff.
Louisiana Civil Code article 2548 states:
The parties may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer....
In the Purchase Agreement, were hand written the words: "This house is sold in `as is' condition." Such general language, when compared with La. C.C. art. 2548, does not waive the warranty against redhibitory defects. Creger v. Robertson, 542 So.2d 1090 (La.App. 2 Cir. 1989). Even if the "as is" clause of the Purchase Agreement were included in the Act of Sale, it would still not have been sufficient to waive Mr. Tarifa's warranty against redhibitory defects. Thus, the fact that the notary did not include the "as is" clause in the Act of Sale, cannot serve as a basis for holding him liable. Since the trial court's basis for Mr. Simone's liability is not legally sufficient, we reverse this part of the trial court's Judgment.
La. Civil Code article 2520 treats the warranty against redhibitory defects, to wit:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
[Emphasis added.]
We conclude, as the trial court did, that the extensive termite damage within the House was non-apparent. See La. *25 C.C. art. 2521. This is because the termite damage could not be seen prior to the removal of the sheetrock. Due to the necessity of replacing the studs and other interior structure of the House, such extensive termite damage can easily be classified as a redhibitory defect which merits a reduction in the price paid by the buyer.
There are documents and testimony in the record that show visual checks had been performed, including the Wood Destroying Insect Report, that revealed no signs of termite infestation. This evidence lead the trial court to conclude that ground infestation was the means by which infestation occurred. Such ground infestation makes Edgewood liable, as they provided a contract to prevent termite infestation in this House.
The agreed upon price for the Act of Sale was forty-five thousand (45,000.00) dollars, said Act of Sale was passed on March 25, 1998. This sum was a reduced price due to the fact that the purchaser and sellers all agreed the House required work.
Since the sale, plaintiff has expended greater than $20,000 in the repair and upgrade of this House, as well as other monies for adding onto the House. The monies expended for the addition to the House and the upgrade are of no concern for this matter, as the plaintiff only has a right to the difference in value of the home, had he known of the redhibitory defects prior to purchasing the House. To state otherwise, the entitlement to a reduction in price via La. C.C. art. 2520, is only meant to compensate for lost value due to non-apparent defects, in this case the termite damage to the studs and other wooden structures.
The trial court did not assign any liability to the vendors, Riess and Lund. Had the vendors been held liable for $20,000.00, due to the termite damage, then they could have collected from Edgewood via their cross claim for indemnity based upon their contract. But, there is no basis in a redhibitory action to hold Edgewood liable to the purchaser without the vendors being liable. This is due to the fact that to hold someone liable via redhibition implies the contractual relationship of a sale. Here, the only sales contract exists between Mr. Tarifa, purchaser, and Ms. Riess and Ms. Lund, the vendors.
As La. C.C. article 2520 states, when quanti minoris is the relief sought, it is the difference between the actual value and the price paid that constitutes the relief. In this case the trial court committed legal error by awarding $20,000.00, which is the sum the plaintiff alleges it cost him to get this house in the condition he wanted it. The proper award should have been the difference between the actual appraised value of the house in the termite infected condition in which it was found and the amount Mr. Tarifa paid for the House.
The only expert testimony in the record that establishes the actual market value of the house, with the termite damage, was offered by Charles Ruffino. Mr. Ruffino was qualified as an expert in real estate appraisal and stated that the value of the House on 2813 Marietta Street was $36,000.00. Mr. Ruffino's appraisal value was uncontroverted.
As stated earlier, the price paid was $45,000.00. So, by subtracting the actual value from the price paid we arrive at the sum of $9,000.00 ($45,000-$36,000= $9,000), which is the sum that should have been awarded to the plaintiff.
In awarding the sum of $9,000.00 to the plaintiff we note that the sellers are liable to the plaintiff. However, as the trial court found, due to the fact that the sellers *26 had a contract with Edgewood to protect the Home from termite infestation, the sellers can collect that sum from Edgewood, making Edgewood ultimately liable for $9,000.00.
Edgewood is liable because there is evidence in the record that they did not properly perform their duties under the contract to protect the Home against the termite damage that occurred. Specifically, Edgewood did not retrench the House for sixteen years, leaving the House vulnerable for ground infestation. There is also evidence that Edgewood did not comply with Louisiana regulations governing the distance between drilled holes for the application of termite pesticide. With this factual finding of the trial court we do not tamper.
In sum, plaintiff is entitled to an award of $9,000.00, for which the vendors are liable. Likewise, Edgewood is liable to the vendors for $9,000.00 for breach of contract, in not properly securing this House from termite infestation and damage. All other aspects of this Judgment, not to the contrary of the aforementioned, are affirmed, including the award of legal interest and costs.
REVERSED IN PART; AMENDED IN PART AND AFFIRMED.

ON APPLICATION FOR REHEARING
MICHAEL E. KIRBY, Judge.

REHEARING GRANTED
We grant this rehearing to clarify our ruling that in addition to other amounts awarded, vendors owe plaintiff reasonable attorney's fees via La. C.C. art. 2545. Likewise, Edgewood Pest Control Company is liable to the vendors for the reasons stated in our Judgment. Therefore Edgewood is liable to the plaintiff, for the plaintiff's reasonable attorney's fees.
The plaintiff argues in his application for rehearing that the 1993 Revision Comment (d) to La. C.C. art. 2541 should alter our Judgment. That Comment states:
Under this Article, in sales of immovable property the amount to be awarded is the amount necessary to convert an unsound structure into a sound one. Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (La.1956[1959]).
Besides citing this 1956 case, plaintiff also cites, Billups v. Lyons, XXXX-XXXX (La. App. 4 Cir. 5/29/02), 821 So.2d 499, 507, writ denied XXXX-XXXX (La.10/14/02), 827 So.2d 424.
These cases are distinguished on their facts. Nevertheless, we also note that the characterization of a suit as using a contract theory of recovery as opposed to a tort theory can render similar, although not identical results.[1] Liability and obligations result under both theories due to the occurrence of events, somewhat foreseen in contracts and more fortuitous in tort. The scope of damages in contract and tort are measured somewhat differently. Another difference seen here is that attorney's fees are generally not available in a tort recovery as they are in a contract theory of recovery. La. C.C. art. 2545. This matter occurred within the context of two contractual disputes (i.e. the sales contract and termite contract), that is why we used a contractual analysis instead of that of tort.
Plaintiff was an expert in home repair/construction and had repaired over twelve homes with termite damage. Plaintiff/purchaser, had grown up around and in *27 this home, and knew it required substantial repair. The purchase agreement and sales contract between the buyer and seller reflected an understanding that the house required substantial work and for this reason the price was well below market value. That was why an "as is" clause was included in the Purchase Agreement. Additionally, plaintiff made very extensive renovations to the home, that were far beyond a mere repair for termite damages. For example, the plaintiff extended and upgraded the entire roof of the house to cover the carport. Finally, plaintiff's expenses were not proven sufficiently, as defense counsel noted that many of the plaintiff's expenses were not related to repair of termite damage, but rather to the renovation and modernization of an old home.
The home was appraised by the lending bank for $67,000.00. The plaintiff/purchaser, who was friends with the sellers, agreed upon the price of $45,000.00, because both parties knew the home required substantial repair. Ms. Riess, one of the sellers, testified that upon learning of termite infestation, she offered to the plaintiff a rescission of the sale.
To hold the defendants/sellers, Ms. Iris Riess and her sister Ms. Eleonor Lund liable to the plaintiff for any more than $9,000.00 would violate the contract and the understanding between them.
Although there is no privity of contract between the plaintiff/purchaser and Edgewood Pest Control, Edgewood becomes liable to plaintiff because it is liable to the vendors via its breach of contract with them.
Moreover, we note that in Billups v. Lyons, supra, we dealt with a recovery that relied on a tort theory and we properly assessed a percentage of fault upon the defendant pest control company. La. C.C. Article 2323.
In the matter sub judice the trial court assigned no written reasons nor did it orally assess any percentage of fault.[2] Under the manifest error standard of review, we did not disturb the trial court's finding of liability based on a breach of contract by the pest control company. However, to allow plaintiff to duplicate his recovery under a breach of contract by means of a similar tort theory is not permissible.
For the aforementioned reasons we clarify our opinion on rehearing by stating that Edgewood Pest Control Company is liable to the plaintiff for reasonable attorney's fees by way of Louisiana Civil Code article 2545. Our decree remains the same.
REVERSED IN PART; AMENDED IN PART AND AFFIRMED.
NOTES
[1] After a search of the record, we did not find any written reasons issued by the trial court.
[1] Galligan, Thomas, Contortions Along the Boundary between Contracts and Torts, 69 Tul. L.Rev. 457 (Dec. 1994).
[2] There was substantial evidence in the record that the termite infestation could have occurred due to a break in the slab, which would make another party liable.