428 So.2d 534 (1983)
RUDY BROWN BUILDERS, INC.
v.
ST. BERNARD LINEN SERVICE, INC.
No. CA-0331.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1983.
Amato & Creely, Robert G. Creely, Gretna, for plaintiff-appellant.
Ewell C. Potts, Chalmette, for defendant-appellee.
Before REDMANN, C.J., and GULOTTA and KLEES, JJ.
GULOTTA, Judge.
In this building contract case, Rudy Brown Builders, Inc., the contractor, appeals from a judgment denying its claim for the final installment payment of $6,100.00 retained by the owner, St. Bernard Linen Service, Inc. We affirm.
On August 10, 1976, St. Bernard Linen contracted with Rudy Brown Builders for the construction of a $61,000.00 building. Following completion and acceptance, the owner refused to make the final payment because of the alleged defects in construction. Payments for extras claimed by the *535 contractor were also withheld. This suit followed, seeking recovery of $15,658.40, representing $6,426.72 in extras together with the $6,100.00 unpaid final payment and attorneys fees. The owner in reconvention claimed entitlement to $24,854.67, which includes replacement costs of the slab, correction of defects and expert fees for slab testing.
Following a trial on merits, the trial judge awarded to the plaintiff contractor $5,844.59 for the "extras", but also awarded the defendant-owner $4,480.00 for correction of roof defects. Further, concluding that the contractor had not performed according to the contract, the trial judge denied recovery to the contractor for the $6,100.00 payment.
In written reasons, the trial judge stated:
"The contract provided that the slab of the building was to be of six (6") inches uniform thickness. The testimony shows it was not, but that it varied from 6.15" to 3.90" with an average thickness of 5.13". An expert ... testified that 13 core samples were taken and that only one (1), sample six (6), met the 6" slab thickness requirement and that that sample was taken from the center of the building... He also testified than an allowable of between ¼" and ½" was acceptable and in his deposition stated that ¾" in isolated instances was acceptable, but that he felt very uncomfortable with a 3.90" core sample. Even if 5.25" would be acceptable, the slab delivered to defendant was still .12" below acceptable standards and .87" below that which was contracted for."
Although recognizing that the slab was deficient, the court believed that the defendant had not "proved the present necessity of a new slab", and held that the "deprivation of the balance of the contract price should be sufficient to cover the deficiency."
Appealing, the contractor objects only to that portion of the judgment concerning the retainage. In this regard, the contractor argues that it is entitled to the full contract price because it has substantially completed the construction and the owner has failed to prove any specific damages from the slab deficiencies. Rudy Brown Builders further points out that the trial judge's conclusion of non-performance of the contract contradicts its finding that the slab does not require replacement. We disagree.
When a contractor has "substantially performed" a building contract, he is entitled to recover the contract price, even though defects or omissions are present. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961); Neel v. O'Quinn, 313 So.2d 286 (La.App. 3rd Cir. 1975), writ denied 319 So.2d 440 (La.1975). "Substantial performance" means that, despite the deficiencies, the construction is fit for the purpose intended. Pete's Plumbing & Heating, Inc. v. Geissert, 413 So.2d 554 (La.App. 4th Cir.1982); Neel v. O'Quinn, supra. Factors bearing on this factual determination include: the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the owner of the work performed. Airco Refrigeration Service, Inc., v. Fink, supra; Pete's Plumbing & Heating, Inc. v. Geissert, supra; Design & Corrosion Eng. v. Piggly Wiggly, 408 So.2d 292 (La. App. 2nd Cir.1981).
In our case, the evidence supports a finding of substantial performance. William Hansel, a civil engineer who took core samples of the concrete slab, was of the opinion that the slab could accommodate the load, although he would not have accepted the slab because it exceeded normal variances in thickness. Similarly, Woodrow Ellis Alfred, a civil engineer who supervised the construction, also acknowledged the slab was not as thick as contracted but could support the load. The owner and its machinery have occupied the building since December, 1976. Under these circumstances, despite the slab deficiencies, the building has served its intended purpose. Accordingly, the contractor has "substantially performed" the contract.
*536 Once the contractor proves substantial performance, the burden shifts to the owner to show the defects or omissions entitling him to a reduction in the contract price for the cost of repair or completion. Pete's Plumbing & Heating, Inc. v. Geissert, supra; Design & Corrosion Eng. v. Piggly Wiggly, supra. The defendant-owner in our case has proven variances in the slab thickness that exceed tolerances and fail to meet the contractual requirement of a uniform slab. Although the evidence established no necessity for replacement of the slab, nonetheless, the owner has not received a slab of the agreed thickness. Despite the owner's failure to show with mathematical certainty the cost to correct the deficiencies, we cannot say the trial judge erred in denying recovery for the balance due under the contract.
Accordingly, the judgment is affirmed.
AFFIRMED.
REDMANN, C.J., concurs and assigns reasons.
REDMANN, Chief Judge, concurring.
Perhaps no one would contend that laying a four-inch concrete slab is "substantial" performance of a contract to lay a six-inch slab (just as installing an 80-hp boiler is not substantial performance of a contract for a 120-hp boiler, notwithstanding the useability of the smaller boiler, Manitowoc Steam B. Wks. v. Manitowoc Glue Co., 120 Wis. 1, 97 N.W. 515 (1903), cited in Corbin, Contracts, § 706). If a six-inch slab were the only provision of a contract between owner and contractor, the contractor certainly should not recover the contract price of a six-inch slab for laying a four-inch slab. Even if the slab were fully satisfactory for the owner's purposes, the most the contractor could recover would be the value of the four-inch slab, on the basis of unjust enrichment, La.C.C. 1965 (quantum meruit). The burden of proving that value would be the contractor's.
Our contract is for an entire building, however, and the slab is not uniformly only two-thirds of specified thickness. Our case is thus more complex, but the principles are the same. The concrete slab of a slab-foundation building is a substantial element of the entire building contract. It was therefore the province of the trier of fact to conclude, notwithstanding that the building is usable for the owner's purposes, that the substantial failure of performance on so substantial an element as the concrete slab defeats the contractor's claim of substantial performance of the contract, and thus defeats the claim for the contract price. That was the trial judge's conclusion, and it should remain undisturbed on review as not "clearly wrong," Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
If one considers the present performance substantial, and the owner therefore obliged to pay the contract price less cost of remedying defects, would one allow the owner to recover the cost of replacing the slab? That would apparently require taking down the building, tearing up the defective slab, and reconstructing the entire building, starting with a new, six-inch slab. The fact that the building is useable for the owner's purposes prevents a court from imposing so drastic a remedy. Especially when the defect is not deliberate, only a Shylock could ask that the contractor suffer the loss of perhaps 100% of the contract price by rebuilding, rather than allow the owner to suffer only a less substantial but still satisfactory slab. The trial judge was thus correct if ruling that the owner was not entitled to a new slab. But that should be the only effect of the mere useability of the building in cases of substantial departure from the contract specifications. For example, a hollow-core concrete block building with brick veneer might be fully useable for a warehouse owner's purpose, but if the contract calls for a solid brick building the owner should not have to pay the solid-brick price for a brick-veneer building, but only the value of the lesser building. So too, our owner should not have to pay the price of a building with six-inch slab, but only the value of the building with the lesser slab.
*537 Whether the building with lesser slab was worth more or less than the 90% of the contract price that had already been paid is not shown. But it was the contractor's burden to prove the amount by which his defective performance had enriched the ownerthat is, to prove the value of the building as builtand thereby to prove his entitlement to more than the 90% of price he had already been paid. The contractor did not carry that burden.