EDWIN A. LOMBARD, Judge.
hThis suit arises from a construction contract dispute between the Appellants, condominium owner Michael Brenner and his mother, Jackie Brenner (“the Bren-ners”), and carpenter, Donald Zaleski. The Brenners seek review of First City Court’s August 18, 2014 judgment dismissing their breach of contract claims with prejudice. Finding that the First City Court made a legal error in determining that the contract at issue was not breached, we reverse. Additionally, this matter is remanded for a determination of damages.
Facts and Procedural History
The Brenners retained Mr. Zaleski to build a wooden loft[1] in the ceiling of their condominium, which is located in New Orleans.[2] The parties executed a contract on January 11, 2013. The contract did not contain a clause or wording relating to the termination of Mr. Zaleski’s services. Pursuant to the contract, Mr. Zaleski was to be paid $12,677.00, of which he was paid 50%, or $6,338.00, at the |2start of construction. The record reflects the Bren-ners increased the initial scope of Mr. Za-leski’s work, and an invoice update was later issued by him reflecting that he began to receive payments from the Bren-ners upon completion of certain tasks.
After Mr. Zaleski began building the loft,[3] but prior to his completion of the project, the Brenners observed what they believed to be cosmetic flaws in his work. Ms. Brenner e-mailed Mr. Zaleski regarding the Brenners’ concerns, which she discussed with Mr. Zaleski the following day. Ms. Brenner alleges that Mr. Zaleski became aggressive during their conversation. Thereafter, the Brenners fired Mr. Zaleski on or about April 22, 2013. However, post-termination, they discovered a substantive defect: the loft subflooring installed by Mr. Zaleski was moving or flexing.
Subsequently, home inspector and civil engineer Friedrich Gurtler was hired by the Brenners to inspect Mr. Zaleski’s work, particularly the condition of the sub-flooring. Mr. Gurtler opined that Mr. Za-leski’s work was substandard and not structurally sound. He recommended the loft be reinforced with steel support columns, which the Brenners installed.
The Brenners[4] filed suit against Mr. Zaleski in First City Court alleging he breached his contract as well as the implied warranty of good workmanship. Following a bench trial, the First City Court dismissed the Brenners’ lawsuit with prejudice. The Brenners timely appealed and raise two (2) assignments of error:
1. The First City Court erred in finding that Mr. Zaleski was premature *79 ly terminated in direct contravention of lathe existing law found in Vazquez v. Gairens, 26 So.2d 319 (La.App.Orleans 1946); and
2. The First City Court erred in determining that the timing and reasons for the termination of the contract should prevent recovery from damages clearly proven both in law and fact.
A trier of fact’s factual conclusions respecting a breach of contract claim are governed by the manifest error or clearly wrong standard of review. See Tarifa v. Riess, 02-1179, p. 10 (La.App. 4 Cir. 5/7/03), 856 So.2d 21, 27, as clarified on reh’g (9/3/03), writ denied, 03-2776 (La.12/19/03), 861 So.2d 574 and writ denied, 03-2755 (La.12/19/03), 861 So.2d 577. Where there is conflicting testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed by the reviewing court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there are two permissible views of the evidence, the trier of fact’s choice between them cannot be manifestly erroneous or clearly wrong. Id. However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Evans v. Lungrin, 97-0541, 97-0577, pp. 6-7 (La.2/6/98), 708 So.2d 731, 735.
A contract is the law between the parties, and the parties will be held to full performance in good faith of the obligations flowing from the contract. Henderson v. Ayo, 11-1605, p. 5 (La.App. 4 Cir. 6/13/12), 96 So.3d 641, 645 (citing La. Civ.Code art.1983). It is implicit in every building contract that the contractor’s work be performed in a good, workmanlike manner, and free from defects in materials or work. Id. [Citations omitted.] See La. Civ.Code art. 2756.
| ¿The Brenners’ aver that their breach claim is based upon La. Civ.Code art. 2769, entitled Contractor’s liability for non-compliance with contract, which states:
If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
Furthermore, they also contend that they had the right to terminate Mr. Zale-ski’s employment at any time pursuant to La. Civ.Code art. 2765, entitled Cancellation of contract by owner, which provides:
The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.
While the Brenners are correct in asserting that they had the right to terminate Mr. Zaleski at any time under La. Civ. Code art. 2765, our court has explained that claims under La. Civ.Code arts. 2765 and 2769 are distinct.
In Henderson, 11-1605, pp. 5-6, 96 So.3d at 645, we reasoned that pursuant to La. Civ.Code. art. 2765, Louisiana law recognizes the right of the owner of a construction project to terminate a contract to build after work has commenced on a project. It is the owner’s obligation, nevertheless, to pay the contractor for the work he or she completed. Id., 11-1605, p. 6, 96 So.3d at 645. We further clarified that La. Civ.Code art. 2769 applies where a contractor does not perform the work he or she has contracted to do:
*80 On the other hand, if the contractor fails to do the work he has contracted to perform, or does not execute in the manner agreed to he is liable in damages for losses that may ensue from his noncompliance with the contract.

J¿d.

The Brenners further rely upon Vazquez v. Gairens, 26 So.2d 319, 320 (La.App.Orleans 1946), wherein our predecessor court considered the application of both La. Civ. Code arts. 2765 and 2769:[5]
These Articles, dealing with the same subject matter, are to be considered together. By so doing, it seems clear that, where an undertaker has fallen down completely in performance of his contract, or, as in the case here, has performed so unskillfully that his work does not fulfill the object of the contract, the proprietor has' an absolute right to cancel the agreement. Of course, if a proprietor is not justified in his complaint respecting the performance of the contract, he renders himself liable to the contractor for all such damages as the latter has sustained under Article 2765. See Wickliffe v. Cooper & Sperier, 167 La. 689, 120 So. 52 [ (1929) ].
On the other hand, if the cancellation of the contract is founded on just ground, the proprietor is entitled to recover the damages he has sustained by reason of the contractor’s noncompliance under Article 2769. There is no obligation on the part of the owner to allow a contractor, who has breached his undertaking by the performance of an unskilled and unsuitable job, additional time or opportunity to rectify his work.
Id. at 320.
Pursuant to the holdings of Henderson and Vazquez, La. Civ.Code art. 2769 applies where the cancellation of a contract is founded on just grounds. To establish a contractor’s liability for damages due to defective workmanship, the owner must prove: 1) the existence and nature of the defects; 2) that the defects are due to faulty materials or workmanship, and 3) the cost of repairing the defects. Cascio v. Carpet, 42,653, p. 10 (La.App. 2 Cir. 10/24/07), 968 So.2d 844, 850.
| ^Regarding whether the Brenners’ demonstrated the existence and nature of defects, we note that in its judgment, denying the Brenners’ breach of contract claim, the First City Court reasoned:
Based upon the testimony and evidence at trial, this Court finds that the plaintiff did not allow Mr. Zaleski time to complete the job and cure any deficiencies. Mrs. Brenner admitted that she did not like “how the defendant talked to her” and that was her primary reason for termination. She never stated the cosmetic issues with the job were her reason for ending the contract with Mr. Zaleski until trial.
The First City Court'refers to the existence of “deficiencies” in Mr. Zaleski’s work; however, it held that Mr. Zaleski was not permitted to complete the job and cure deficiencies. This is legal error. As noted above in Vazquez, “[tjhere is no obligation on the part of the owner to allow a contractor, who has breached his undertaking by the performance of an unskilled and unsuitable job, additional time or opportunity to rectify his work.” Vazquez, 26 So.2d at 320. Also, Ms. Brenner testified more than once at trial that she terminated the contract not only because of Mr. Zaleski’s work, but also because of his attitude. The First City Court deter *81 mined based upon the record that Mr. Zaleski’s attitude was the “primary reason” for his termination. However, this is consistent with Ms. Brenner’s testimony that she terminated him because of his attitude and the quality of his work. In essence, while Mr. Zaleski’s attitude was the “primary” reason for his termination, it was not the sole reason for his termination. Lastly, the court’s finding that Ms. Brenner never stated until trial that she terminated the contract because .of cosmetic issues is incorrect because the Brenners pled in the fourth paragraph of their petition that Mr. Zaleski’s work was “substandard, performed incorrectly, and was not structurally sound.”
^Nevertheless, having determined that the First City Court made a legal error, we conduct a de novo review as to whether the Brenners met their three-prong burden of proof set forth in Cascio.
Our review of the record shows that the Brenners did establish that cosmetic and subfloor defects existed and that these defects are due to Mr. Zaleski’s workmanship. The Brenners testified that just prior to Mr. Zaleski’s termination they collaborated in the drafting of an e-mail to Mr. Zaleski detailing the errors they observed. Ms. Brenner, who sent the e-mail, testified that they noted the following cosmetic errors: incorrectly or inconsistently hinged doors; an uneven air hole; incorrectly installed door tongs; ill-fitting air conditioning cabinet doors, and sloppily cut sheetrock. Furthermore, post-termination, they noticed that there was movement in the subflooring installed by Mr. Zaleski. The Brenners also argue that Mr. Zaleski fell behind on the work schedule he contracted to follow. The contract, they contend, provided that the flooring be completed within five days, but he took six to eight weeks to complete the flooring system, according to the testimony of Mr. Brenner.[6]
Mr. Gurtler, who was accepted by the First City Court as an expert in home inspections and civil engineering, testified that the floor joists installed by Mr. .Zale-ski provided inadequate support of the floor framing system. He testified that the floor framing system was not structurally sound and not functional for its intended purpose. He recommended that the loft be reinforced with steel support columns to correct this issue. He additionally noted cosmetic defects, such as unevenly cut doors and poorly cut miter joints. A report Mr. Gurtler prepared was | sadmitted into evidence. No other experts testified at trial. In consideration of the above testimony, we find that the Brenners did establish the existence and nature of the defects they alleged and that those defects are due to the faulty workmanship of Mr. Zaleski.
The third and final factor the Brenners must prove is the cost of repairing the defects. Cascio, 42,653, p. 10, 968 So.2d at 850. “If the owner meets the burden of proof, the remedy is to reduce the contract price in an amount necessary to perfect or complete the work according to the terms of the contract.” Id., 42,653, p. 10, 968 So.2d at 851.
Mr. Zaleski avers that he was working under a cost-plus or percentage contract;[7] therefore, the cost to complete *82 the work is not recoverable. Joe Bonura, Inc. v. Hiern, 419 So.2d 25, 29 (La.App. 4th Cir.1982). However, our Court has held that under cost-plus contracts owners are entitled to recover from the contractor amounts expended to remedy defects in workmanship. Kerner v. Gilt, 296 So.2d 428, 483 (La.App. 4th Cir.1974), writ denied, 300 So.2d 185 (La.1974).
The Brenners argue that the cost of the remedial work that needed to be performed was $10,829.67, based on the testimony of Mr. Gurtler and Ms. Brenner.[8] However, checks introduced at trial evidencing how much the Brenners |3paid for the remedial work total $7,881.59.[9] In consideration of this discrepancy, we remand this matter to First City Court for the determination of damages due to the Brenners for Mr. Zaleski’s breach of contract.
DECREE
For the foregoing reasons, the judgment of the First City Court is reversed, and this matter is remanded for a determination of damages. Each party is to bear its own costs. See La.Code Civ. Proc. art. 2164.
REVERSED AND REMANDED

. The loft was to be constructed completely out of wood.

. In addition to the construction of the loft, Mr. Zaleski was also hired to demolish some walls and closets. Mr. Zaleski testified that, while he was working on the loft, Ms. Brenner asked him to demolish a closet and a downstairs bathroom.

. Building permits were not obtained by either party for the construction of the loft.

.Ms. Brenner was not a party to the contract with Mr. Zaleski. However, she oversaw Mr. Zaleski’s construction of the loft for her son while he was at work. Moreover, she paid him $8,000.00 for the work he performed and, after his termination, she paid for remedial construction work on the loft. Mr. Zale-ski filed an exception of no right of action against Ms. Brenner, which the First City Court denied.

. The present wording of La. Civ.Code arts. 2765 and 2769 is the same as it was when the Vazquez opinion was rendered.

. The contract, which Mr. Zaleski drafted, states that he "should be able to get the new floor space built in 5 business days.”

. "Louisiana jurisprudence recognizes three basic types of construction contracts: lump sum contracts; cost plus percentage of the cost contracts (percentage contracts); and cost plus a fixed fee contract.” Schiro-Del Bianco Enterprises, Inc. v. NSL, Inc., 99-1237, p. 4 (La.App. 4 Cir. 5/24/00), 765 So.2d 1087, *82 1089-90, writ denied sub nom. Schiro-Del Bianco Enterprises, Inc. v. NSL. Inc., 00-2509 (La. 11/13/00), 774 So.2d 146. [Citations omitted.] "In a percentage contract, or cost plus percentage of the cost contract, the owner reimburses the contractor for the costs of the material and labor while paying the contractor a percentage of the total cost of the project for his profit or gain.” Id. [Citations omitted.]

. Plaintiffs’ exhibits D-2, D-3, D-5 and D-8 were checks introduced at trial showing the amounts Ms. Brenner paid for remedial work. The amount of these checks, however, total $7,881.59, not $10,829.67. The $10,829.67 amount the Brenners’ assert they are owed is supported by the invoices they attached to their petition for damages. The invoices, however, were not admitted into evidence at trial.

. These checks were written in the following amounts:
$1,450.00
$575.00
$3,076.59
$2,780.00
$7,881.59