John WILLIAMS, Jr. and Gloria Williams

v.

Ricardo SILVA d/b/a Silva Construction

NO. 2016–CA–0182

Court of Appeal of Louisiana, Fourth Circuit.

December 21, 2016

Luke P. LaRocca, SIMON, PERA-GINE, SMITH & REDFEARN, L.L.P., 1100 Poydras St., 30th Floor, New Orleans, LA 70163, COUNSEL FOR PLAINTIFF/APPELLEE

George G. Angelus, 700 Camp Street, New Orleans, LA 70130, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Judge Dennis R. Bagneris, Sr., Judge Roland L. Belsome, Judge Joy Cossich Lobrano)

Judge Roland L. Belsome

This appeal arises from the trial court's judgment in favor of Plaintiffs in a claim for unworkmanlike and incomplete performance of residential construction contracts. For the reasons that follow, we hereby affirm the judgment but reverse the award of attorney's fees.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs John and Gloria Williams's home was badly flooded and wind damaged in 2005 during Hurricane Katrina. Plaintiffs contacted Defendant Silva Construction, L.L.C. concerning work needed to repair the damage. The parties ultimately entered into four separate contracts. The first contract, entered into in April 2006, was for foundation repair work and leveling the house. Subsequently, the parties entered into three additional contracts: 1) a chimney repair contract in July 2006; 2) a window purchase and installation contract in August 2006; and 3) an interior construction work contract including multiple items in September 2006.

Less than a year after the foundation work was completed, Plaintiffs' house had gone out of level again, which caused numerous problems including the windows and doors going out of square. In 2007, Plaintiffs hired Orleans Shoring to level the foundation for a price of $14,000. The leveling work completed by Orleans Shoring also failed to hold. It was later discovered that the house had serious water issues that, without being separately addressed, prevent the house from remaining level.

Plaintiffs filed suit against Defendant in late 2007 seeking rescission of the contracts and/or damages. Plaintiffs filed one amended, supplemental, and restated petition for rescission in April 2010.

In April 2015, Defendant filed a motion for summary judgment, which was denied. The case went to trial shortly after, and in July 2015 the court found in favor of Plaintiffs in the total amount of $12,225 plus attorney's fees in the amount of thirty percent of the total damages award.

Defendant's motion for new trial was denied. This appeal followed.

## ASSIGNMENTS OF ERROR

Defendant first argues that the trial court erred in denying his motion for summary judgment. He then claims that the trial court erred in finding in favor of Plaintiffs at trial. He further contends that the trial court erred in awarding attorney's fees to the Plaintiffs without statutory or contractual authority.

Plaintiffs request only that the trial court's judgment be modified to allow for the recovery of additional attorney's fees incurred as a result of this appeal, should they prevail.

## LAW AND DISCUSSION

The controlling law in this suit is undisputed. This is a breach of contract claim for unworkmanlike and incomplete residential construction work, controlled by La. C.C. art. 2769, which provides that "[i]f an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."

■ "It is implicit in every building contract that the contractor's work be performed in a good, workmanlike manner, and free from defects in materials or work." *Henderson v. Ayo*, 2011–1605, p. 5

(La.App. 4 Cir. 6/13/12), 96 So.3d 641, 645 (quoting *Pete's Plumbing & Heating, Inc. v. Geissert*, 413 So.2d 554, 556 (La.App. 4 Cir. 04/07/82)). Louisiana law gives the owner the right to terminate a construction contract even though the contractor has begun work on the project, but the owner is still required to pay the contractor for work the contractor has completed. La. C.C. art. 2765; *Oscar Daste & Sons, Inc. v. Dobard*, 516 So.2d 1331, 1335 (La. App. 4 Cir. 12/15/87), *writ denied*, 520 So.2d 743 (La. 03/11/88). If the contractor has failed to do the work he contracted to perform, or if he "does not execute in the manner agreed to" the contractor is "liable in damages for losses that may ensue from his noncompliance with the contract." La. C.C. art. 2769.

■ The jurisprudence establishes three essential elements for proving a *prima facie* case of defective workmanship. The owner must prove: "1) the existence and nature of the defects; [sic] 2) that the defects are due to faulty materials or workmanship, and 3) the cost of repairing the defects." *Brenner v. Zaleski*, 2014–1323, p. 5 (La.App. 4 Cir. 6/3/15), 174 So.3d 76, 80, *reh'g denied* (July 22, 2015). The appropriate remedy for a defective workmanship claim is a reduction in the contract price. *Id.*, 2014–1323, p. 8, 174 So.3d 81. The owner is entitled to the cost of necessary repairs or the amount paid to remedy the defective work. *Nicholson & Loup, Inc. v. Carl E. Woodward, Inc.*, 596 So.2d 374, 392 (La.App. 4 Cir. 3/17/92), *writ denied*, 605 So.2d 1098 (La. 1992), and *writ denied*, 605 So.2d 1098 (La. 1992). A contractor is still entitled to part of the contract price when substantial performance is shown, even though there are defects or omissions in the work. *Rudy Brown Builders, Inc. v. St. Bernard Linen Serv., Inc.*, 428 So.2d 534, 535 (La.App. 4 Cir. 1983). "Factors bearing on this factual

determination include: the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the owner of the work performed." *Id.*

■ The trial court's factual conclusions with respect to a claim for unworkmanlike performance are governed by the manifest error or clearly wrong standard of review. *Id.*, 2014–1323, p. 3, 174 So.3d at 79. "Where there is conflicting testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed by the reviewing court." *Id.* (citing *Rosell v. ESCO*, 549 |₅So.2d 840, 844 (La.1989)). If two permissible views of the evidence are presented, the fact finder's choice between them cannot be manifestly erroneous. *Id.* The standard for reviewing the damages awarded for breach of contract is whether the trial court abused its discretion. *Tallulah Const., Inc. v. Ne. Louisiana Delta Cmty. Dev. Corp.*, 2007–1029, p. 5 (La.App. 4 Cir. 4/23/08), 982 So.2d 225, 229.

### Motion for Summary Judgment

■ On appeal, Defendant first argues that the trial court erred in denying his April 2015 motion for summary judgment. Defendant claims that there were no genuine issues of material fact and that he presented sufficient evidence to show that Plaintiffs would be unable to prove the essential elements of their claim at trial.

Appellate courts review the denial of summary judgments *de novo* under the same criteria governing a trial court's consideration of the motion. *Hare v. Paleo Data, Inc.*, 2011–1034 (La.App. 4 Cir. 4/4/12), 89 So.3d 380, 387. A motion for summary judgment that shows there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966. The burden of proof remains with the movant; however, "if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* |₆If the party opposing summary judgment "fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

Defendant's motion for summary judgment alleged that Plaintiffs had insufficient evidence to support their unworkmanlike performance claim, and had no proof of completion or repair cost for any work he performed. He referenced an expert report prepared by Gurtler Brothers in 2012 ("Gurtler Report") at the behest of the United Way, a charitable organization that aided Plaintiffs in repairing their home. The Gurtler Report included detailed information and photographs regarding the various problems with the foundation and the house. It stated that the issues with the house's foundation were a result of standing water under the house, which was eroding the foundation and causing moisture problems. The Gurtler Report provided that the water drainage and accumulation under the house were likely the causes of the instability of the house, and noted that the house in its present condition was unstable. The report went on to provide that the shoring work that had been performed at the house was of unacceptable quality. However, it is of note that by the time Gurtler Brothers inspected the house, six years had passed since Defendant completed his work and

five had passed since Orleans Shoring worked on the foundation.

Defendant argued in his motion that the findings in the Gurtler Report illustrated that the real problem with Plaintiffs' house was the standing water, and without the water retention problem being addressed the house would be unable to remain level. This, he asserted, proved that his workmanship was not the cause of the house becoming out of level again.

As to the claims of unworkmanlike and incomplete performance of the other three contracts, Defendant claimed that Plaintiffs refused to allow him to finish the work. Additionally, he argued that the work was remedied by the United Way at no cost to Plaintiffs, and thus Plaintiffs could not prove the element of repair or completion cost damages as required. Defendant further asserted that Plaintiffs presented only their own self-serving testimony for their claims for related damages, including loss of rental income, rent paid by Plaintiffs, delay damages, and inconvenience.

In opposition, Plaintiffs maintained that they had sufficient evidence to prove the essential elements of their claim. They included with their opposition the August 2007 foundation inspection report from Contemporary Engineers, which stated that "it is inconceivable how a shoring contractor could have left this house in its present condition." Plaintiffs also presented an affidavit authenticating the report from Michael Cenac, P.E., the director of Contemporary Engineers. This affidavit stated that Mr. Cenac inspected the foundation work completed by Defendant at Plaintiffs' home and found several problems, including the "[o]riginal brick piers bearing insufficient weight; [n]ew piers installed without use of mortar causing horizontal gaps to be visible in between stacked blocks; several piers with gaps

between newly installed piers and 6x6 sills; and [r]otten sills that should have been replaced." Mr. Cenac opined that "the shoring work was not completed or that the work should be considered extremely poor workmanship." Plaintiffs also claimed that they had to spend an extra $14,000 to have the house leveled again within a year of Defendant's leveling work, and presented the contract with and payment to Orleans Shoring as evidence of the repair cost element of their claim.

At the May 21, 2015 motion hearing, Defendant presented evidence that the leveling work he did was not faulty, but rather the condition of the ground under the house prevents the house from remaining level for any period of time. He testified that the Orleans Shoring work done later to level the house was simply a new attempt to level the house using different methods. Plaintiffs presented evidence that Defendant's leveling work was substandard because the piers were defective and improperly installed. With regard to the other three contracts and the work that was not performed, Plaintiff John Williams testified that Defendant abandoned the work and that he had to hunt Silva down to get his house key back.

A review of the record shows that the trial court correctly found that there were genuine issues of material fact on both the elements of workmanship and damages. There was conflicting evidence presented concerning the methods and quality of the work performed by Defendants that precluded summary judgment on the issue of workmanship. Additionally, there was opposing evidence regarding costs of repairing and completing the construction work that created genuine issues of material fact as to the element of damages. Accordingly, the denial of Defendant's motion for summary judgment is affirmed.

### Prima Facie Case of Construction Defects

■ On appeal, Defendant claims that the trial court erred in finding Plaintiffs met their burden of proof regarding the existence and cause of alleged defects in the house. Defendant asserts that Plaintiffs failed to prove by a preponderance of the evidence that any alleged house leveling defects were due to defendant's faulty materials or workmanship. Defendant also argues that the defects in the windows and doors were caused by the house going out of level, and that any other work left incomplete was a result of Plaintiffs not allowing Defendant to complete the work. Finally, Defendant contends that the trial court erred in finding that Plaintiffs proved repair and completion costs for work performed by the Defendant.

The foundation contract at issue provided for Defendant to shore up the foundation and level the house, excluding the porches, for the price of $12,780. Defendant completed the work and Plaintiffs paid him in full; however, within a year the house was out of level again. Plaintiffs then hired Orleans Shoring in 2007 to level the house again for a price of $14,000.

At trial, Defendant presented the Gurtler Report as evidence that Plaintiffs' house has unresolved problems that make it impossible for the house to remain level. Defendant pointed out that Plaintiffs' house went out of level again following the alleged remediation work completed by Orleans Shoring. At the time of trial the house was again 8" out of level. Defendant Ricardo Silva testified that prior to beginning work he advised Plaintiff John Williams that the sidewalks next to the house needed to be leveled. Mr. Silva stated that he told Mr. Williams that the house would not remain level without the sidewalk repair work because of drainage issues caused by the sidewalk tilting significantly towards the house on two sides. Mr. Silva stated that Mr. Williams told him not to do any work on the sidewalks, though, because the Williams would take care of the problems themselves.

Mr. Williams testified that Mr. Silva did not tell him that the house would not remain level if the sidewalks were not also repaired. Plaintiffs presented the expert report prepared in 2007 by Mr. Cenac of Contemporary Engineering Services as evidence that Defendant's work was substandard. The report indicated that Mr. Cenac inspected Defendant's work approximately fifteen months after it was completed and found the work to be poorly done and partially incomplete. Plaintiffs also presented the leveling contract with Defendant, which did not indicate that any additional work needed to be completed for the house to be properly leveled. The only notation on the contract was that the porches were not to be included in the leveling work.

The trial court found that despite the water retention and related soil conditions under the house, Defendant's work on the foundation was performed poorly. The court determined that Mr. Cenac's expert report and the corresponding testimony were reliable evidence of the level of workmanship performed by Defendant. The court noted that the alleged repair work completed by Orleans Shoring was performed in 2007, so the 2012 Gurtler Report was of limited relevance considering all of the intervening factors that could have arisen in the five year period between the work and the inspection report. Further, the trial court examined the leveling contract itself and found that if Defendant had knowledge of the water levels under the house and the soil conditions prior to writing the contract, Defendant could have written an exclusion clause similar to the

one he drafted regarding the porches. The court determined that as a professional who performed shoring work for a living, Defendant should have been aware of the effect the soil conditions could have had on the home leveling project.

In setting the damage award for breach of the leveling contract, the court noted that Plaintiffs paid Defendants $12,780, and then paid Orleans Shoring an additional $14,000 to try to level the house again a little over a year later. The court took into consideration that Defendant performed some work under the leveling contract, including work on between twenty to thirty existing piers, installing five new piers, and replacing rotten sill. The court found that while Defendant performed some of this work poorly, Plaintiffs still benefitted to a certain extent from the work under the leveling contract. The court further found that there may have been some soil erosion between Defendant's 2006 leveling and Mr. Cenac's 2007 inspection that was independent of Defendant's work and could have contributed to the house going out of level. For these reasons, the trial court awarded Plaintiffs $7,000.00 as damages due to incomplete and poor performance by Defendants under the April 2006 leveling contract.

The chimney contract required that Defendant remove the brick chimneys and furnace vents in the house, frame those areas, and deck and shingle the areas of the roof that were opened as a result of the removal. The court found that the work on the chimney contract was partially performed, but "the openings from the chimneys and furnace vents were not framed in and the openings in the roof from the chimneys was not decked and shingled." The court noted that Defendant was paid in full in the amount of $5,959.00, although Defendant failed to complete the work. The court found that since the contract was paid in full yet certain items were not performed, Defendants were liable to Plaintiffs in the amount of $1,7000.00 for work not performed but paid for under the July 2006 contract.

The window contract required that Defendant install twenty-five windows and six doors in the house. The contract stated that the cost for the windows, labor, and materials of the twenty-five windows was listed at $7,050.00 while the installation of the six doors was listed at $800.00. Defendant completed all of the work and was paid in full in the amount of $7,850. Plaintiffs reported problems with Defendant's installation of the doors and the windows. The windows were reportedly not the same type as the ones Plaintiffs requested, so they ended up having to order new ones. The court found that the windows were not properly installed and awarded Plaintiffs the labor costs on the job. Because the contract did not specify what portion of the payment was for labor and what was for materials, the court took the amount specified for the windows and divided it in half to set the damage award on the contract at $3,525.00 as the amount of labor paid for but poorly and unsatisfactorily performed under the August 2006 contract.

The fourth and final contract listed eleven different items of work to be performed, including flooring, framing, and cabinet installation throughout the house. Defendant performed some of this work, but multiple items in the contract were either incomplete or improperly done. The court found that seven of the eleven items to be performed were not performed or poorly performed, including the bathroom and kitchen floors being replaced with the incorrect plywood, rotten lumber in the attic not being repaired, bathroom ceilings not being removed, bathroom cabinets not being installed, a

bedroom fireplace not being installed, and the tub not being removed from one bathroom. The reason that Defendant did not complete the work on the contract was disputed at trial. Defendant claimed Plaintiffs did not permit him to finish the job, while Plaintiffs claimed that Defendant abandoned the work. The contract was only paid in part, and a $6,000 balance remained at the time of trial. The court noted that the contract had only been paid in part, and determined that the unpaid balance of $6,000.00 was not due to Defendant as it represented the work not completed or performed poorly. The court found no damages due on the contract.

Based on the evidence presented, the trial court's finding that Plaintiffs proved Defendant's performance of the four contracts was unworkmanlike and incomplete is not clearly wrong. Additionally, the court's finding that Plaintiffs met their burden of proving repair and/or completion costs is not manifestly erroneous. Finally, there is no evidence the trial court abused its discretion in setting the damage award amounts. Therefore, the trial court's judgment is hereby affirmed.

*Attorney's Fees*

■          |₁₄Defendant also claims that the trial court committed legal error by awarding Plaintiffs attorney's fees without any statutory or legal authority. Attorney's fees may not be awarded by the court in Louisiana except where authorized by contract or statute. *State, Dept. of Transp. & Dev. v. Wagner*, 2010–0050, p. 2 (La. 5/28/10), 38 So.3d 240, 241. La. C.C. 2769, the controlling law in this case, does not provide for the imposition of attorney's fees. Additionally, the contracts between the parties did not provide for attorney's fees. Therefore, the trial court's improper grant of attorney's fees in this case is hereby reversed. With regard to Plaintiffs' request for additional attorney's fees for this appeal, as there is no authorization by statute or contract, the request is denied.

**REVERSED IN PART AND AFFIRMED**