MAXINE THOMAS          *       NO. 2023-CA-0296

VERSUS                 *

                                COURT OF APPEAL

HOUSING LOUISIANA NOW,   *
L.L.C., TRACY F. ROBINSON,       FOURTH CIRCUIT
MASTER BUILDERS &         *
CONTRACTORS, L.L.C.,          STATE OF LOUISIANA
RICHARD J. MITHUN,     * * * * * * *
DEAN'S AIR CONDITION &
HEATING, L.L.C., AND DEAN
WALTERS

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-08574, DIVISION "F-14"
Honorable Jennifer M Medley,
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Karen K. Herman)


Philip Anthony Franco
ADAMS AND REESE LLP
701 Poydras Street
4500 One Shell Square
New Orleans, LA 70139-6534

      COUNSEL FOR PLAINTIFF/APPELLEE

Terese M. Bennett
THE LAW OFFICE OF TERESE M. BENNETT
813 S. Carrollton Avenue
New Orleans, LA 70118

      COUNSEL FOR DEFENDANT/APPELLANT


                        **AMENDED, AND AS AMENDED, AFFIRMED**
                              **MARCH 21, 2024**

*DLD*
*SCJ*
*KKH*

This case involves a claim for breach of contract. The claim arises out of a contract to perform repairs to a home that was severely damaged by several tornadoes in New Orleans on February 7, 2017. The homeowner, Maxine Thomas, filed a breach of contract suit for nonperformance, defective performance and delay in performance against defendant, Housing Louisiana Now, LLC ("HLN"), who is the only appellant in this appeal. Other defendants named in plaintiff's petition included Tracy Robinson (the manager of HLN), Master Builders & Contractors LLC ("MBC"), Richard J. Mithun (the manager of MBC), Dean's Air-Conditioning & Heating LLC, and Dean Walters (the manager of Dean's).[1] HLN, MBC and Mithun filed reconventional demands for outstanding balances allegedly owed to them by plaintiff, Thomas. The trial court rendered judgment in favor of plaintiff and against defendant, HLN, in the amount of $83,597.03. All other claims were dismissed with prejudice.

Plaintiff, an elderly widow, initially entered into a contract with MBC on February 12, 2017, whereby MBC agreed to repair plaintiff's home for the amount of her insurance loss proceeds, $181,517.60. Subsequent to the execution of that agreement, HLN and MBC decided to work together in an arrangement whereby

---

[1] Plaintiff's claims against Dean's Air Conditioning and Heating, LLC, and Dean Walters were severed prior to trial and are not relevant to this appeal.

1

HLN would be the general contractor on the project and MBC would work as one of HLN's subcontractors. A contract between plaintiff and HLN was then executed on March 13, 2017, which superseded the original contract between plaintiff and MBC. This subsequent contract provided that the prior contract with MBC would be attached as the scope of work, and that the payment HLN would receive for this project would be limited to the amount of plaintiff's insurance proceeds.

Because plaintiff had a reverse mortgage on her property, her insurance company issued a check for the initial portion of the insurance proceeds to plaintiff's mortgage company. The mortgage company then issued a check that was made payable to plaintiff and HLN in the amount of $83,597.03. This check was dated May 5, 2017. Plaintiff endorsed the check and tendered the full amount to HLN.

Tracy Robinson, the manager of HLN, accepted the check from plaintiff on behalf of HLN, but subsequently decided not to go forward with the project for several reasons, including because she believed that the repairs would cost more than the amount of insurance proceeds due to plaintiff under her policy. She testified that when she came to this conclusion, she initially wanted to return plaintiff's check and let plaintiff find another contractor.

However, Mr. Mithun told Ms. Robinson that MBC wanted the project so - unbeknownst to plaintiff - HLN, through Ms. Robinson, endorsed the check for the initial portion of plaintiff's insurance proceeds over to MBC. It is unclear from the record exactly when the check was deposited by MBC, but Ms. Robinson estimated that she received it from plaintiff in late May 2017. A handwritten note

on the copy of the check in the record states that the check was deposited on June 9, 2017.

Ms. Robinson testified that she instructed Mr. Mithun to execute a new contract between MBC and plaintiff. It is undisputed that this was never done.

On August 21, 2017, plaintiff sent a written notice terminating HLN as contractor stating in the notice that the reason for the termination was "lack of communication, sloppy work and no show." She also stated, "I have not heard from HLN since the check was picked up in May." She further stated, "I do not have a contract with Richard Mithum [sic]." When plaintiff sent the notice of termination, she had no knowledge at that time that months earlier HLN had decided not to go forward with the project, had given the project to MBC along with $83,597.03 of plaintiff's insurance proceeds or that MBC had been instructed by Ms. Robinson to execute a new contract between MBC and plaintiff. Mr. Mithun was asked at trial to explain why he did not take steps to execute a new contract with plaintiff on behalf of MBC after Ms. Robinson told him that HLN did not want to go forward with the project. He replied, "I don't know that I have a good answer for that." The $83,597.03 check that HLN accepted from plaintiff and endorsed to MBC was never returned to plaintiff. This suit by plaintiff for breach of contract followed.

Following trial, judgment was entered in favor of plaintiff and against HLN in the amount of $83,597.03 for breach of contract for nonperformance and delay in performance. Plaintiff's claims against the other remaining defendants were dismissed with prejudice. Additionally, the reconventional demands filed against plaintiff by defendants, HLN, MBC and Mithun, were dismissed with prejudice. This appeal by HLN followed.

On appeal, HLN asserts the following assignments of error:

(1) The trial court erred by holding HLN liable for breach of contract and in failing to credit HLN for the performance of the solidary obligation by the subcontractor, MBC, despite having determined that the subcontractor had satisfactorily performed;

(2) The trial court erred in ordering HLN to repay plaintiff $83,597.03 that was paid to HLN, when the trial court determined that the value of the work already performed at the time of the termination equaled the amount of money plaintiff had paid to HLN as its initial payment under the HLN contract; and

(3) The trial court judgment contains an error of law in its attempted dismissal of Tracy Robinson, with prejudice, because she had been dismissed with prejudice two years earlier by the previous presiding judge on an exception of prescription, and therefore was not a defendant before the trial court at the trial of this matter.

Before addressing the arguments in the first two assignments of error, we note that they are based in part on statements found in the trial court's written reasons for judgment. "[T]he district court's oral or written reasons for judgment form no part of the judgment, and … appellate courts review judgments, not reasons for judgment." *Wooley v. Lucksinger*, 2009-0571, p. 77 (La. 4/1/11), 61 So. 3d 507, 572, quoting *Bellard v. American Cent. Ins. Co.,* 2007-1335 p. 25 (La. 4/18/08), 980 So.2d 654, 671; *Greater New Orleans Expressway Comm'n v. Olivier,* 2002-2795, p. 3 (La. 11/18/03), 860 So.2d 22, 24 ("Appeals are taken from the judgment, not the written reasons for judgment."); La. C.C.P. arts. 1918, 2082 and 2083.

In the first assignment of error, HLN argues that the trial court erred by holding HLN liable to plaintiff for breach of contract and in failing to credit HLN for the performance of MBC. HLN contends that it did not breach its contract with plaintiff. It further contends that HLN and MBC were solidary obligors, and that

4

HLN should have been credited for the work performed by MBC on plaintiff's home.

Plaintiff argues that the testimony and other evidence established that HLN breached the contract with her by nonperformance, defective performance and delay in performance of its obligation to repair her home, and by abandoning the contract. Plaintiff further contends that because she had no contractual relationship with MBC at the time of HLN's breach, HLN and MBC were not solidary obligors and HLN should not be credited for work performed by MBC on her home.

According to plaintiff, HLN accepted the $83,597.03 check from her that she had already endorsed. Instead of endorsing and depositing the check to an HLN account, HLN endorsed the check over to MBC and abandoned the contract having no further involvement. Plaintiff said the evidence shows no one from HLN ever visited the house before or during the project, communicated with her on the progress of work or had any familiarity with the daily operations of the work.

The "elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages." *Payphone Connection Plus, Inc. v. Wagners Chef, LLC*, 2019-0181, p. 8 (La.App. 4 Cir. 7/31/19), 276 So.3d 589, 595, quoting *1100 S. Jefferson Davis Parkway, LLC v. Williams*, 2014-1326, p. 5 (La.App. 4 Cir. 5/20/15), 165 So.3d 1211, 1216. The "party claiming the rights under the contract bears the burden of proof." *Id.*, 2019-0181, p. 9, 276 So.3d at 595.

In *Brenner v. Zaleski*, 2014-1323 (La. App. 4 Cir. 6/3/15), 174 So.3d 76, this Court set forth the standard of review for a breach of contract claim as follows:

> A trier of fact's factual conclusions respecting a breach of contract claim are governed by the manifest error or clearly wrong standard of review. *See Tarifa v. Riess,* 02–1179, p. 10 (La.App. 4 Cir. 5/7/03), 856 So.2d 21, 27, *as clarified on reh'g* (9/3/03), *writ denied,* 03–2776 (La.12/19/03), 861 So.2d 574 and *writ denied,* 03–2755 (La.12/19/03), 861 So.2d 577. Where there is conflicting testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed by the reviewing court. *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989). Where there are two permissible views of the evidence, the trier of fact's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. *Evans v. Lungrin,* 97-0541, 97-0577, pp. 6-7 (La.2/6/98), 708 So.2d 731, 735.

*Brenner,* 2014-1323, p. 3, 174 So.3d at 79.

Finding no legal errors interdicting the fact-finding process, the manifest error or clearly wrong standard of review applies here.

Regarding the first element of a breach of contract claim, it is undisputed that a contract existed between plaintiff and HLN whereby HLN would act as general contractor for repairs to plaintiff's home. The scope of work to be performed by MBC, the subcontractor, was attached to the contract between plaintiff and HLN.

With regard to the second element, the party's breach of a contract, the record established that HLN endorsed the check from plaintiff's mortgage company to MBC and turned the project over to MBC. HLN took these actions without plaintiff's knowledge or consent. Ms. Robinson stated at trial that she decided for a variety of reasons that she no longer wanted to be directly involved with this project so, in her words, "I handed it off to a subcontractor that was already involved in the job, that already had a relationship with the homeowner, that was experienced and knew exactly how to bring this job together." Ms.

Robinson testified that she instructed Mr. Mithun to execute a new contract between MBC and plaintiff, but this was never done.

Ms. Robinson testified that it was her understanding that HLN would still have some involvement in the project, although not direct involvement, after her conversation with Mr. Mithun about turning the project over to MBC. However, her testimony also confirmed that no one from HLN supervised or directed the work at plaintiff's home. Ms. Robinson stated she allocated those responsibilities to MBC.

The contract between plaintiff and HLN, as the contractor, included the clause stating that "Contractor shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Home Renovation Project in compliance with the Contract Documents." The record is clear that HLN breached this section of the contract.

In addition to failing to perform the work it contracted to do, HLN also later abandoned the contract when it endorsed the check from plaintiff's mortgage company to MBC, and turned the project over to MBC, all without plaintiff's knowledge or consent. The record supports a finding that HLN also breached its contract with plaintiff by abandonment.

As for the third element required in a breach of contract claim, resulting damages, the record establishes that the check for $83,597.03, representing a portion of plaintiff's insurance proceeds, was never returned to her. Additionally, the evidence showed that plaintiff was required to engage other contractors to perform the repairs on her house after she terminated her contract with HLN for

HLN's breach of its responsibilities under the contract. Plaintiff testified that she incurred additional expenses beyond those covered by her insurance proceeds.

In addition to arguing that it was not in breach of contract, HLN contends that HLN and MBC were solidary obligors, and that HLN should have been credited for the work performed by MBC on plaintiff's home. HLN alleges that the value of the work performed by MBC on plaintiff's home prior to the date of plaintiff's termination notice exceeded the amount of the check that HLN endorsed to MBC and discharges HLN's liability to plaintiff under the law of solidary obligations.

Louisiana Civil Code article 1794 states:

> An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.

Louisiana Civil Code article 1796 provides:

> Solidarity of obligation shall not be presumed. A solidary obligation arises from clear expression of the parties' intent or from the law.

The record shows that HLN and MBC were not solidary obligors to plaintiff. The earlier contract plaintiff had with MBC had been superseded by the contract between plaintiff and HLN. After the subsequent contract between plaintiff and HLN was executed, MBC became a subcontractor of HLN, and thereafter had no contractual relationship with plaintiff.[2]

---

[2] Although plaintiff alleged in her petition that HLN and MBC were liable to her *in solido*, the evidence presented at trial established that they were not solidary obligors. In *Littleton v. Montelepre Extended Care Hosp.*, 94-1661 (La.App. 4 Cir. 6/7/95), 657 So.2d 572, this Court rejected the argument that parties should be treated as solidary obligors because solidarity was alleged in the petition. "Solidarity is a legal relationship whose existence must depend upon facts required to support it." *Id.*, p. 2, 657 So.2d at 573.

We find no merit in HLN's argument that the trial court erred in holding HLN liable for breach of contract and in failing to credit HLN for the performance of its subcontractor, MBC.

In the second assignment of error, HLN argues that the trial court erred in ordering it to repay plaintiff $83,597.03 that was paid to HLN. As stated above, HLN contends that the value of the work already performed by MBC at the time of plaintiff's termination of the HLN contract exceeded the amount of money plaintiff had paid to HLN as its initial payment under the contract.

In support of this argument, HLN cites Louisiana Civil Code article 2765, which states, "The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require." However, in this case, we find the applicable Civil Code article is Article 2769, which states, "If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."

As stated above, HLN and MBC were not solidary obligors. Plaintiff and MBC did not have a contractual relationship after its earlier contract was superseded by the contract between plaintiff and HLN.

HLN is not entitled to credit for work performed by another contractor with whom plaintiff had no contractual relationship. HLN failed to supervise and direct the work on plaintiff's home as required by its contract with plaintiff, and abandoned the contract by turning the project over to MBC without plaintiff's knowledge or consent.

9

Louisiana Civil Code article 1994 states:

> An obligor is liable for the damages caused by his failure to perform a conventional obligation.
> A failure to perform results from nonperformance, defective performance, or delay in performance.

Plaintiff is entitled to the return of the full amount of her insurance proceeds that were paid to HLN. HLN's unilateral decision to endorse the check to MBC and give the project for repairs of plaintiff's home to MBC was not a decision for which plaintiff is responsible. HLN argues that it incurred certain pre-termination expenses related to the project, but the record does not include evidence supporting payment by HLN for any such expenses. Louisiana Civil Code article 2299 states, "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." We find the trial court did not err in ordering HLN to repay plaintiff $83,597.03.

In its third assignment of error, HLN argues that the trial court judgment contains an error of law in its attempted dismissal of Tracy Robinson, with prejudice, because she had been dismissed with prejudice two years earlier by the previous presiding judge on an exception of prescription, and therefore was not a defendant before the trial court at the trial of this matter. We find this assignment of error has merit.

In a previous appeal in this matter, this Court affirmed a trial court judgment maintaining an exception of prescription filed by Tracy Robinson, and dismissing her from this lawsuit with prejudice. *Thomas v. Hous. Louisiana Now, L.L.C.*, 2020-0183 (La. App. 4 Cir. 9/30/20), 369 So.3d 392. This Court found that because plaintiff's claim against Robinson was for intentional interference with a contract, which is subject to a one-year prescriptive period, the claim against her

had prescribed because plaintiff's petition was filed more than one year after the termination of the contract between plaintiff and HLN. *Id.* Accordingly, because Ms. Robinson was already dismissed with prejudice from this litigation prior to trial of this matter, we will amend the trial court judgment in the instant appeal to delete the reference to Tracy Robinson's dismissal.

For the reasons stated above, the trial court judgment is amended to delete the reference to the dismissal with prejudice of Tracy Robinson. In all other respects, the trial court judgment is affirmed.

**AMENDED, AND AS AMENDED, AFFIRMED**